THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE FRANKENBERG, Plaintiff in Error.

*Opinion filed October 26, 1908—Rehearing denied Dec. 3, 1908.*

1. LARCENY—*what ownership of goods is sufficient to support indictment for larceny.* One whose property has been seized under an execution against other persons has such a general ownership in the property as will support an indictment for larceny against anyone who feloniously steals it while it is in the custody of the law under the execution.

2. SAME—*when attorney is guilty of larceny.* An attorney who feloniously removes goods from a warehouse, where they were held on execution, and converts them to his own use with full knowledge that the judgments under which the goods were seized have been satisfied, is guilty of larceny.

3. SAME—*conviction may be based upon uncorroborated testimony of an accomplice.* A person indicted for larceny may be convicted upon the uncorroborated testimony of an accomplice, provided the jury believe the testimony of such accomplice is true and worthy of belief.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

WALTER A. LANTZ, and JULIAN C. RYER, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (ROBERT E. TURNEY, and JOHN T. FLEMING, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

At the April term, 1906, of the criminal court of Cook county, an indictment was returned charging George Frankenberg and John R. McDonnell with the larceny of certain household goods belonging to Lucy J. Kimball. The cause was tried at the March term, 1908. At the conclusion of all the evidence the trial court directed a verdict of not guilty as to John R. McDonnell and a verdict of guilty was rendered by the jury as to George Frankenberg. The value

of the property stolen was found to be $350. After over-ruling a motion for a new trial and in arrest of judgment the court sentenced Frankenberg to imprisonment in the penitentiary at Joliet as provided by law. Frankenberg has sued out a writ of error for the purpose of bringing the record of his conviction into review in this court.

This case grows out of the same transactions upon which the prosecution was based in the case of *Luddy* v. *People*, 219 Ill. 413. The two cases are substantially alike in many respects. The property alleged to have been stolen is the same in both cases. Plaintiff in error, at the time of the alleged theft, was, or pretended to be, an attorney at law and engaged in the collecting business. Four small claims came into the hands of the plaintiff in error against H. C. Kimball, Aaron Blinski and W. W. Phelps. These claims were for wages due certain parties who had been employed in the laundry business which had been conducted by Kimball, Blinski and Phelps as a partnership, under the name and style of "The Ivory Laundry." The claims which came into plaintiff in error's hands for collection were in favor of Maggie Hern, Elizabeth Schoen, Emma Rich and Delbert Barnhart. The claims were for one or two weeks' wages due the claimants. These claims were brought to plaintiff in error by W. W. Phelps. Soon after the claims were received plaintiff in error brought suits before John R. McDonnell, a justice of the peace of the town of Lyons, Cook county, Illinois. On July 26, 1904, the four cases came on for a hearing before the justice of the peace. At the time of the trial H. C. Kimball appeared and presented receipts from the several plaintiffs, purporting to be in full of the several demands sued upon. Upon investigation it appeared, however, that Kimball had paid about one-third of the several claims although the receipts acknowledged payment in full. The justice deducted the amount actually paid and rendered judgment against the defendants for the balance, together with the costs, five dollars in each case,

as an attorney fee for the plaintiff in error. The amounts of the several judgments are as follows: Maggie Hern, $16.50; Elizabeth Schoen, $5.65; Delbert Barnhart, $15; Emma Rich, $4.55. On the same day that these judgments were rendered, executions were sworn out and placed in the hands of W. J. Luddy, a constable, for collection. On July 28 the constable, accompanied by his son, W. J. Luddy, Jr., went to the residence of H. C. Kimball, at No. 6458 Jackson avenue, in the city of Chicago, to make a levy to satisfy the executions. Upon arriving at the Kimball residence the constable found no one at home except a servant. The constable was about to levy the executions upon a piano, but was informed by the servant girl that the piano did not belong to the Kimballs. W. J. Luddy, Jr., testifies that he went to a telephone and called up plaintiff in error, and was told by plaintiff in error to proceed and make a levy upon the household goods and have them conveyed to a warehouse, and to conceal the name on the wagon in which the goods were to be hauled. A levy was made, by virtue of each of the four executions, upon the household goods, and the goods were loaded into a wagon and conveyed to Phinney's warehouse, at Sixty-ninth street and Evans avenue. The evidence shows that the name on the wagon was covered with a rug. The goods were stored at Phinney's warehouse and receipts were taken for them and delivered to plaintiff in error. The goods remained in the Phinney warehouse for some considerable time, and it is a matter involved in some controversy as to what became of the goods after they were thus stored by the constable. At the time the levy was made, H. C. Kimball and his wife, Lucy J. Kimball, were not at home. Lucy J. Kimball, who appears to have been the owner of all the goods levied upon, was visiting in Michigan. Where H. C. Kimball was on the day the levy was made does not appear from the evidence. He was not at home. On August 3 following the levy, H. C. Kimball paid the several judgments to the par-

ties entitled to them and they each executed a satisfaction piece. Plaintiff in error admits in his testimony that these satisfaction pieces were shown to him by Kimball and his attorney, Hooper, a few days after the judgments were rendered. The date upon which the satisfaction pieces were exhibited to the plaintiff in error, according to the evidence of Kimball and Hooper, was August 10. At the time the satisfaction pieces were presented to plaintiff in error he said to Hooper, "You have settled with these people," and plaintiff in error made a note of the satisfaction pieces. Hooper and Kimball were trying to find Luddy, the constable, so as to procure a release of the levies. Plaintiff in error was either unable or unwilling to give the parties any information as to the whereabouts of the constable, although the evidence shows he had an office with the plaintiff in error and kept the papers pertaining to business given him by plaintiff in error in a desk in that office. W. J. Luddy, Jr., testifies that about the 11th of August he went with plaintiff in error to Phinney's warehouse, and that he and plaintiff in error removed most of the Kimball goods to plaintiff in error's residence at No. 265 East Sixty-sixth place. Lucy J. Kimball and her husband testified that they afterward saw several articles of furniture belonging to Lucy J. Kimball in plaintiff in error's house. Among the articles identified by the Kimballs are a golden oak dresser, identified by Mrs. Kimball by certain spots on it; a rocking chair, identified by Mrs. Kimball as belonging to her by a small chip being out of it under the seat; a sewing machine and a davenport, the davenport being identified by a peculiarity of one of the castors. Plaintiff in error contradicts all this testimony relating to the goods being in his possession, and testifies that no part of the Kimball goods was ever in his house or in his possession; and the two persons named by young Luddy as the parties who hauled the goods from the warehouse to plaintiff in error's residence contradict Luddy, and testify that they did not haul,

or assist in hauling, any goods from the warehouse to the Frankenberg place. Plaintiff in error insists that under this evidence the verdict of the jury ought to be set aside because it is not supported by the evidence.

It will be seen from the foregoing statement of the evidence that the question thus raised is largely dependent upon the credibility of the witnesses. None of the witnesses whose testimony has been thus far referred to are impeached or otherwise discredited, except in so far as they may be discredited by other witnesses giving contradictory accounts of the transactions. If plaintiff in error went to the warehouse and took these goods and removed them to his place and afterwards sold them and appropriated the proceeds to his own use, the jury would be warranted in finding him guilty of larceny. After the satisfaction pieces had been exhibited to him, showing that the judgments had been paid in full, any appropriation or conversion of the goods to his own use might well be found to have been with a felonious intent. Plaintiff in error does not rest his defense upon the ground that he had any pretense of right to take these goods from the warehouse, but he denies taking them at all. We think the evidence of Mrs. Kimball and her husband, to the effect that they found her goods in the plaintiff in error's house, is reasonable and consistent. The manner in which Mrs. Kimball identifies the different articles of furniture shows she had that accurate knowledge which only a woman who had owned and used the articles in her own housekeeping would be expected to have. She mentions the spot on the dresser, the chip out of the rocker and the peculiarity in the castor belonging to the davenport with such particularity of description as to exclude the possibility that she was mistaken about finding her goods in the possession of the plaintiff in error. The only way to reach the conclusion that the goods of Mrs. Kimball were not in the house of plaintiff in error is to reject the testimony of the Kimballs as unworthy of belief. There is no

direct testimony in the record contradicting the evidence of
the Kimballs except the evidence of plaintiff in error.  As
already shown, the testimony of young Luddy is to the ef-
fect that he assisted the plaintiff in error in removing these
goods from the Phinney warehouse to plaintiff in error's
residence.  All these witnesses were before the jury and
their credibility was a question for the jury to determine.
We are not inclined to disturb this conviction on the ground
that there is not sufficient evidence to support the verdict.

Plaintiff in error also insists that there is no proof of a
felonious taking, such as is necessary to support a convic-
tion of larceny under a common law indictment for that
offense.  This contention proceeds upon the assumption that
the original taking of the goods under the execution was
legal or at least not criminal.  We do not find it necessary,
under the proofs in this case, to decide whether the con-
viction could be sustained on the theory that the original
taking was felonious, and that plaintiff in error was co-
operating with and aiding, abetting and encouraging the
party who actually took the goods.  That larceny may be
committed where legal process is fraudulently and feloni-
ously used for the purpose of securing possession of the
goods by the thief has long been recognized by the common
law.  (1 Hawk. P. C. 333, par. 12; 1 Hale's P. C. 507;
*Aldrich* v. *People,* 224 Ill. 622.)  The law recognizes two
kinds of ownership in personal property:  general and spe-
cial.  Whether the levy upon the goods of Lucy J. Kim-
ball by virtue of an execution against other persons would
give the officers so levying the execution a special property
in the goods seized we need not stop to discuss.  It is cer-
tain that Lucy J. Kimball had such a general ownership in
these goods as would support an indictment for larceny
against anyone who feloniously stole them while in the cus-
tody of the law under the executions.  Lucy J. Kimball not
only had the general property in the goods seized, but after
the judgments were satisfied she became entitled to their

immediate possession. This was the status of the property at the time it was removed from the warehouse.

Plaintiff in error, by his counsel, raised the question whether this conviction can rest on the mere failure of the plaintiff in error to order or direct the constable to release the levy and restore the goods to the owner. This is not the foundation upon which the conviction rests. Plaintiff in error is not guilty of larceny because of a mere omission or neglect on his part to take affirmative action to have the goods restored to Mrs. Kimball, but he is guilty because he feloniously took the goods from the warehouse and converted them to his own use after he knew that the judgments under which they had been seized had been satisfied. Such a taking is such a violation of the general ownership of Lucy J. Kimball as will support a conviction for larceny under a common law form of indictment.

Plaintiff in error next insists that the trial court erred in giving instruction No. 11 on behalf of the People. That instruction is as follows:

"The court instructs the jury that under the law of this State the defendant may be convicted upon the uncorroborated testimony of an accomplice; and if the jury believe, from the evidence in this case, the testimony given by the witness W. J. Luddy is true, then they can act upon the same as true. The testimony of an accomplice, like all the other evidence in the case, is for the jury to pass upon."

The complaint made concerning the above instruction is that it does not contain a correct statement of the law. This criticism is not well taken. The law of this State is that the jury may convict upon the uncorroborated evidence of an accomplice where the jury believe the evidence of such accomplice to be true and worthy of belief. *Gray* v. *People,* 26 Ill. 344; *Earll* v. *People,* 73 id. 329; *Honselman* v. *People,* 168 id. 172; *Kelly* v. *People,* 192 id. 119.

It is further insisted that this instruction should not have been given without a modifying clause advising the

jury that they should act upon the evidence of an accomplice with care and caution. At the instance of plaintiff in error the court gave the jury the following instruction:

"The jury are instructed that while it is the rule of law that a person may be convicted upon uncorroborated testimony of an accomplice, still the jury should always act upon such testimony with great care and caution and subject it to careful examination in the light of all other evidence in the case, and the jury ought not to convict upon such testimony alone, unless, after a careful examination of such testimony, they are satisfied, beyond all reasonable doubt, of its truth."

The giving of this instruction at the instance of plaintiff in error removes the objection now under consideration to instruction No. 11. It also answers the first objection made.

It is next objected that instruction No. 11 is erroneous for the reason that it singles out the evidence of W. J. Luddy, thereby making his evidence unduly prominent before the jury. Taking the two instructions together above set out, the reference to Luddy as an accomplice tended to affect his testimony unfavorably before the jury. There was no other person who testified before the jury in this case to whom the word "accomplice" could have referred. This being true, we see no substantial difference between referring to him as an "accomplice" in plaintiff in error's instruction and as W. J. Luddy in connection with the word "accomplice" in the other instruction. The jury would clearly understand both instructions as applicable to the testimony of the same person. While it is true, as a general rule, this court does not approve of instructions that single out the evidence of a particular witness, for the reason that such practice has the effect of giving undue prominence to the testimony thus specifically referred to, yet in this case we do not think the instruction could have been understood by the jury as an intimation that the court attached any undue importance to the testimony of Luddy.

Plaintiff in error complains of the refusal of the court to give a number of instructions offered by him. We have carefully read all of these refused instructions and compared them with the instructions given on behalf of plaintiff in error, and we find that instructions A, B and D, which were refused, are mere repetitions of what is found in other instructions given, and for this reason they were properly refused. The other instructions the refusal to give which is the subject of exceptions were properly refused, some of them because they did not contain accurate statements of the law, and others because they related to. questions not involved in the case. The court gave twenty-seven instructions to the jury,—twelve for the People and fifteen for plaintiff in error,—which fairly covered all the questions involved in the case. There was no error committed in the refusal of the court to give any of the instructions complained of.

The plaintiff in error finally complains that the court erred in admitting in evidence a registered letter written by Lucy J. Kimball to the constable, notifying him to return her goods and informing him that the judgments had been satisfied and satisfaction pieces filed with the justice of the peace. This letter was written on August 15 and was sent by registered mail to W. J. Luddy, constable, 95 Washington street. The evidence shows that the letter was returned unclaimed. The evidence does not show that plaintiff in error had any knowledge of this letter, although it was addressed to his office. While we do not think the letter was sufficiently connected with plaintiff in error to justify its admission in evidence, still we see nothing in the letter that was prejudicial to plaintiff in error.

Finding no reversible error in the record the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*