(No. 16788.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CAMILLA HARRISON, Plaintiff in Error.

*Opinion filed October 28, 1925.*

1. CRIMINAL LAW—*jury must determine credibility of witnesses.* Where the evidence is conflicting, it is the province of the jury, who have the opportunity to see and hear the witnesses, to determine which set of witnesses is telling the truth, and a verdict of guilty will not be set aside by the Supreme Court if, after a careful review of the evidence, the court is not able to say that the evidence in the record does not show the guilt of the defendant beyond a reasonable doubt.

2. SAME—*what questions are not proper on cross-examination of prosecuting witness.* In a prosecution for assault with intent to murder, the prosecuting witness should not be asked, on cross-examination, whether or not the defendant's husband had visited at her home and if the defendant had not requested the witness to leave her husband alone, as such matters are immaterial; nor should the witness be asked if she had not made threats of violence against the defendant, where, at the time the question was asked, there was no evidence in the record that the witness was the assailant.

3. SAME—*when the defendant cannot complain that self-defense was not defined in instructions.* The defendant cannot complain that the court gave no instruction fully defining the term "self-defense," where the court gave to the jury all the instructions offered by the defendant attempting to define the term.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. F. R. DOVE, Judge, presiding.

L. B. SKIPPER, and CHARLES H. HOLT, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, CHARLES F. DEW, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Camilla Harrison, was convicted in the circuit court of Marion county of the crime of assault to commit murder and sentenced to imprisonment in the penitentiary at Joliet.

The assault arose out of a quarrel between plaintiff in error and Blanch Dunaway, two negro women of Centralia, the former accusing the latter of having illicit relations with her husband. Dunaway testified that she was standing in the yard of her neighbor, Florence Gatlin, visiting with her, about 9:30 o'clock in the morning of October 8, 1924; that as she turned to leave the yard to go home she met Harrison; that Harrison said to her, "Blanch, why don't you let Elam alone?" and that she replied: "I have not got him; how do you get this way?" She saw a gun in the pocket of Harrison's coat and grabbed it out of the pocket. In getting the gun she threw Harrison down but did not strike her. She called for someone to come and take the gun, and Mrs. Gatlin took it and laid it on her porch. After disarming Harrison she let her get up and asked her if she had ever seen her with Elam Harrison, and she replied that she had not. After Harrison was released she stood talking for a few minutes and then got the gun and shot witness in the hip. She seized Harrison and grabbed the gun again, and almost had possession of it when Iona Harrison arrived on the scene and seized witness and threw her to the

ground. As she rose from the ground plaintiff in error shot her a second time. Witness ran into Mrs. Gatlin's house and the Harrison women threw the gun away and left. As she left, plaintiff in error said, "All I hate is I didn't kill the bitch." Three witnesses corroborated Dunaway's version of the shooting.

Plaintiff in error testifies that she is married and has lived in Centralia for twelve years; that Elam Harrison is her husband and Iona her husband's niece; that she lives two blocks from Blanch Dunaway; that on the morning of the shooting she left her home to go to the store and was traveling by the shortest route, which was past the Gatlin house; that she met Dunaway in front of the Gatlin house and asked her why she did not leave her husband alone; that Dunaway made no reply but knocked her down and got on top of her and beat her in the face with her fists; that she beat her for a long time, knocking out one of her teeth and bruising and lacerating her face; that witness had a gun in her coat pocket and that this gun was taken from her and put on the porch; that Dunaway continued to beat her until Iona came and pulled her away; that Dunaway struck Iona and then renewed the attack on her; that Dunaway knocked her down against the porch, and that she reached over and picked up the gun and fired it at Dunaway's leg to stop her; that she could have shot Dunaway in any part of the body she wished, but that she shot her in the leg because her only purpose was to stop the assault; that Dunaway ran into the house and witness threw the gun away and left. Four witnesses corroborated the story of plaintiff in error.

Three witnesses testified that a short time before the fight Blanch Dunaway had stated that if plaintiff in error continued to charge her with misconduct with Elam Harrison she was going to give her a beating. These threats were communicated to plaintiff in error. Three witnesses testified that plaintiff in error had told them a short time

before the shooting that she was going to kill Blanch Dunaway and that she carried a gun for that purpose.

When the evidence is as conflicting as it is in this case, it is the province of the jury, who have the opportunity to see and hear the witnesses, to determine which set of witnesses is telling the truth. After a careful review of the evidence we are not able to say that the evidence in this record does not show the guilt of plaintiff in error beyond a reasonable doubt. If the testimony of the witnesses for the People is true,—and evidently the jury thought it was,—there is no doubt whatever of her guilt.

Plaintiff in error contends that the court erred in sustaining objections to certain questions asked the prosecuting witness on cross-examination. She was asked if Elam Harrison had not visited her at her home and if plaintiff in error had not requested her to leave her husband alone. Both matters were immaterial and the court properly sustained objections to the questions. (*Crosby* v. *People,* 137 Ill. 325; *Dimick* v. *Downs,* 82 id. 570.) On cross-examination Dunaway was asked if she had not made threats of violence against plaintiff in error, and objections to these questions were sustained. At this stage of the trial there was no proof in the record that Dunaway was the assailant, and the ruling of the court was right. (*People* v. *Terrell,* 262 Ill. 138.) After plaintiff in error had testified that Dunaway had attacked her without provocation evidence of threats made by Dunaway was received, and so plaintiff in error had the full benefit of this evidence. We have examined all the objections to the court's rulings on the admission of evidence and find no reversible error.

It is contended that the court erred in the giving and refusing of instructions. There were ten instructions given on behalf of the People and eighteen for plaintiff in error. The third instruction given on behalf of the People told the jury: "If you believe from the evidence and the facts and circumstances in evidence beyond a reasonable doubt that

on or about the 8th day of October, A. D. 1924, Camilla Harrison, armed with a dangerous weapon, to-wit, a revolver, made an assault upon Blanch Dunaway, and you further believe from the evidence beyond a reasonable doubt that such assault was not in the necessary defense of Camilla Harrison, and, if you further believe from the evidence beyond a reasonable doubt that at the time the assault was made, Camilla Harrison was acting not in self-defense but through malice, hatred or revenge and intended to kill Blanch Dunaway, then you should find the defendant, Camilla Harrison, guilty of an assault with intent to murder." The principal objection to this instruction is that it denied to plaintiff in error the right to judge for herself whether the circumstances existing at the time the shots were fired were such as to indicate to her, acting as a reasonable person, that her assailant intended to take her life or do her great bodily harm. Instruction No. 15 given for plaintiff in error told the jury: "The right of self-defense is given in emergencies to enable persons who are attacked and to whom it may reasonably appear that they are in danger of great bodily injury, to defend themselves; that this right is based upon what reasonable persons, having due regard for life, would do under similar circumstances, and the actions of the defendant in this case must be measured by this rule." Considering these two instructions together there is no ground for the contention of plaintiff in error.

The defense offered by the plaintiff in error was self-defense, and in order to preserve this defense to plaintiff in error in the instructions the court used the term "self-defense" several times, and plaintiff in error contends that the use of this term without giving instructions fully defining it was error. The court gave to the jury all of the instructions offered by plaintiff in error defining the term "self-defense," and she is therefore in no position to complain that the term was not fully defined.

While many objections are made to the instructions, we have concluded from our examination of them that the jury were fully and fairly instructed, and that plaintiff in error was not prejudiced by the court's action in the giving and refusing of instructions.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*