THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLAUDE McELVAIN, Plaintiff in Error.

*Opinion filed October 25, 1930.*

R. E. Smith, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, George W. Hogan, Jr., State's Attorney, and Joel C. Fitch, for the People.

Mr. Commissioner Partlow reported this opinion:

The grand jury of Hamilton county indicted Claude McElvain, William Sinks and Cleve Riley for the larceny of a hog. The indictment was *nollied* as to Riley, Sinks forfeited his bond, McElvain (hereafter called the defendant) was tried, found guilty and sentenced to the penitentiary, and his case comes to this court on a writ of error.

The evidence shows that Joe and Earl Maulding, who are brothers, lived in the city of McLeansboro, in Hamilton county, and were dealers in hogs and other stock. They had two hogs in a pen in or near the city, close to some tanks of the Standard Oil Company. The larger of these hogs was a barrow weighing about 225 pounds and worth $25. Joe Maulding saw this hog in this pen on Saturday evening, November 24, 1928. On the next morning he visited the pen and the hog was gone. The conditions in the pen indicated that the hog had been slaughtered and large quantities of blood were found. There were tracks showing that the hog had been dragged out of the pen to a place where there were tracks of a wagon made by wheels having a tire about three inches wide. Maulding followed

the tracks to the home of Cleve Riley and from there to a point on a paved highway. He testified that the wagon was drawn by horses that were shod. He was informed that defendant had a wagon with a wide tire. He went with John Bradwell to defendant's house and found a wagon which had a wide tire. In the bed of the wagon they found hog hair, and blood which was apparently fresh. They told defendant what they had found in his wagon, and he said that it might be that someone had used his team and stolen the hog. A search warrant was obtained immediately and the house of Riley was searched. A skinned shoulder of fresh pork was found. At the home of defendant was found a side of pork that was skinned, and on the dining table was cooked pork, back bones and ribs. About half a gallon of fresh sausage was also found.

Grant Sayres testified that he went to the home of defendant on Saturday evening, November 24, 1928, about dark. Defendant, his wife and Riley were there. William Sinks came shortly afterwards. Defendant and Sinks left about eight o'clock and shortly returned and carried into the house a dead hog, which had been stuck with a knife. The hog weighed about 200 pounds. The witness helped defendant and Sinks skin and cut it up. Riley was there but did not help. Defendant put the skin and entrails into a sack and the meat was stacked in the kitchen. Defendant asked the witness to drive him to the fairground. Defendant put a sack with something in it in the back of the car. The sack looked like the one in which the defendant had put the hide and entrails. They drove to a point near the fairground and the defendant got out with the sack. The witness turned his car around, defendant got in and they went back to the house, where the witness had a drink of whiskey and went home. He testified that when he returned to the house he did not see any of the meat.

Cleve Riley, who was jointly indicted with defendant, testified that he went to defendant's house about seven

o'clock on the evening in question. He went from there with Sinks and defendant to a place "down by the oil house." He stood in the road and saw defendant kill a hog by sticking it with a butcher knife. They placed it in defendant's wagon. They then went to Riley's house, where they got a bedstead and put it in the wagon. When they got to defendant's house Sinks and defendant carried the hog into the house. Riley testified that he was pretty drunk and slept by the stove and did not notice what was done with the hog. He went home about midnight and took with him a shoulder of the hog, which defendant gave him. On cross-examination he stated that he had not been promised immunity from prosecution but that he had served two terms in the penitentiary, one for larceny and the other for the murder of his brother.

Defendant testified that he had a team and wagon and did any jobs of hauling he could get. He kept a team in a barn about two blocks from his residence. On November 24, 1928, one of his horses was shod and the other had no shoes. On the day before the hog was stolen a goat owned by him died. He skinned the goat and threw the bloody hide into the wagon. He testified that he did not believe there was any hair in the wagon bed on the morning after the hog was stolen and if there was any hair it was goat hair; that when his house was searched for meat they only found a "middling;" that he had bought the middling from Joe Bethel on the Friday before, together with a hog's head, which he ground up into sausage; that the meat on the table was sidemeat; that Grant Sayres was at his house on the evening the hog was stolen, reaching there about seven o'clock. Riley was not there at that time. After Sayres arrived at the house defendant went out to the barn, and when he returned to the house Riley was on the back porch and had a hog which weighed about 150 pounds. Defendant and Riley, or defendant and Sinks, took the hog into the house, where it was cut up. Riley had been drinking but

was not so drunk that he could not help. The hog had not been dead long. He did not know where the hog came from. He did not put the skin and entrails in a sack and take them to the fairground. He went to the fairground with Sayres to get some whiskey. When he returned from the fairground the hog was gone and he got no part of it.

Joe Bethel testified that on Friday before the hog was stolen he sold defendant a hog's head and a middling.

Gerry Sinks testified that he is a brother of William Sinks and a brother-in-law of defendant and lived at defendant's house. On the evening of November 24 he went with a young lady to a picture show and then took her home. On his way home he met Riley carrying a sack filled with hog meat. Riley asked him to go home with him, saying that they would have pork chops for breakfast. The witness went to the defendant's house and went into the kitchen. There was no hog meat there except a middling. On the following morning he ate breakfast at defendant's house. They had sidemeat but no ribs or back bones. He saw defendant buy a hog's head from Bethel on the preceding Friday and it was ground into sausage and placed in fruit jars. On Thursday night a goat belonging to defendant died. They skinned it and threw the bloody hide into defendant's wagon.

It is insisted that the evidence fails to establish the guilt of defendant beyond a reasonable doubt; that the most that can be said of the evidence is that defendant may have been associated with the parties who had possession of some of the meat, which is not sufficient to sustain a conviction; that there is no evidence that tends to show that the meat found in defendant's house was the meat of a male hog or of a barrow; that the only evidence of the *corpus delicti* was the evidence of Riley, who admitted that he had served one term in the penitentiary for killing his brother and another term for larceny, and that the judgment should not be permitted to stand on the unreliable confession of Riley.

The question as to whether defendant, under the evidence, was guilty or innocent was a question of fact for the jury. They were the judges of the weight to be given to the testimony. (*People v. Harrison,* 318 Ill. 316.) A reviewing court will not substitute its judgment for that of the jury where no prejudicial error has been committed and the verdict does not appear to be the result of passion or prejudice. (*People v. Lewis,* 313 Ill. 312.) Where the evidence is conflicting, depending upon the credibility of opposing witnesses, a verdict will not be disturbed unless it is so palpably conflicting as to indicate that it was based on passion or prejudice. (*People v. Carrico,* 310 Ill. 543.) The evidence in this case, when considered as a whole, establishes the guilt of defendant beyond a reasonable doubt, and this court would not be justified in setting aside the verdict on the ground that it was the result of passion or prejudice.

Neither is there any merit in the contention that the only proof of the *corpus delicti* is the testimony of Riley, or that his testimony amounts to a confession and is insufficient to prove the *corpus delicti*. Even assuming that there is no proof of the *corpus delicti* aside from the testimony of Riley, there is no merit in this contention. The *corpus delicti* cannot be proved by extra-judicial confessions, alone. (*People v. Maruda,* 314 Ill. 536.) No confession of the defendant was introduced or attempted to be introduced. Riley was not a defendant in the case. He had been indicted jointly with defendant but the indictment had been *nollied* as to him before the trial of defendant was started. Riley was called as a witness on behalf of the People, and his evidence was not incompetent on the ground that he had been a defendant to the indictment. Even if he be considered as an accomplice, a conviction for larceny may be had upon the uncorroborated testimony of an accomplice, provided the jury believe the testimony of such accomplice is true. (*People v. Frankenberg,* 236 Ill. 408.) The testimony

of Riley is corroborated by other facts and circumstances in evidence. The *corpus delicti* was properly established.

The indictment consisted of three counts. In the first and third counts the hog was described as one male hog of the value of $25. In the second count it was described as one barrow hog weighing 225 pounds, of the value of $25. Defendant insists that two separate and distinct offenses were charged; that if he was convicted of stealing a male hog the conviction could not be subsequently pleaded in defense of the larceny of a barrow, and that his motion to quash the indictment should have been sustained. Rule 14 of this court provides that the abstract of the record must be sufficient to present fully every error relied upon. The abstract filed by the defendant does not comply with this rule. It does not show that any motion was made by defendant to quash the indictment or that the court made any ruling on such a motion. In this condition of the record he is in no position to urge that a motion to quash was improperly overruled. There is no merit, however, in the contention even if defendant could properly raise the point. The same offense may be stated in different ways in as many counts as the pleader may deem necessary, provided all of the counts relate to the same transaction. (*People v. Rasmussen,* 328 Ill. 332.) Where there is nothing to show the contrary it will be presumed that the charges in each count relate to the same transaction. (*People v. Dougherty,* 246 Ill. 458.) In Webster's New International Dictionary a barrow is defined as a castrated hog. The word "male" is used to denote sex and to distinguish the person or animal so described as belonging to the sex other than the female sex. A barrow is a hog not belonging to the female sex and may properly be called a male hog. There was no error in overruling the motion to quash the indictment.

Before the trial began defendant filed an affidavit for a continuance on account of the absence of William Sinks, who was jointly indicted with him. The court overruled

the motion but required the People to admit that the witness, if present, would testify to the facts stated in the affidavit. This ruling is assigned as error, and defendant insists that the court should have continued the case for a sufficient time to bring the witness in by an attachment. This assignment of error is not properly before this court, because the motion for a continuance, the affidavit in support thereof and the ruling of the court thereon are not in the bill of exceptions. They appear only in the common law record, which is not sufficient. (*People* v. *Olroyd*, 335 Ill. 61.) The contention of the defendant that the court should have issued an attachment is without merit because he did not request the court to issue an attachment. He did not suggest to the court that an attachment would avail anything, for the reason that in his affidavit he stated he did not know the whereabouts of the witness. No obligation rested upon the court to issue an attachment when the defendant did not request it. Paragraph 738 of chapter 38 (Smith's Stat. 1929, p. 1067,) governs the granting of continuances in criminal cases and provides for the admission in evidence of the contents of the affidavit. The court acted under the provisions of this statute and admitted in evidence the facts the absent witness would testify to as stated in the affidavit, therefore defendant has no cause for complaint. (*People* v. *Ryberg*, 287 Ill. 195; *Keating* v. *People*, 160 id. 480; *Austine* v. *People*, 110 id. 248.) The affidavit alleged that defendant knew of no other witnesses by whom the facts therein stated could be proved, but most of the facts alleged in the affidavit were testified to by other witnesses.

Complaint is made of the first and third instructions given on behalf of the People. Both of these instructions told the jury as to the presumptions that arise from the possession of stolen property immediately after the theft thereof. No complaint is made as to the form or substance of either of these instructions, the only contention being that

232

the evidence does not identify any property found in the possession of the defendant as the property alleged to have been stolen. We have stated the substance of the evidence, and it identified the property found in the possession of defendant as the property alleged to have been stolen, with sufficient particularity to authorize the giving of these instructions.

We find no reversible error, and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*