(No. 20115.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK DONALDSON, Plaintiff in Error.

*Opinion filed October 25, 1930—Rehearing denied Dec. 5, 1930.*

R. D. ROBINSON, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, R. C. RICE, State's Attorney, and MERRILL F. WEHMHOFF, (S. M. MEADOWS, of counsel,) for the People.

Mr. COMMISSIONER PARTLOW reported this opinion:

Frank Donaldson and James A. Harris were indicted by the grand jury of Knox county for an attempt to open a showcase with intent to steal the contents thereof, the property of Fichel D. Pennes. Harris fled and was not apprehended after the indictment was returned. Donaldson was found guilty, the value of the property attempted to be taken was fixed at $1350, he was sentenced to the penitentiary, and a writ of error has been prosecuted from this court to review the judgment.

A motion was made by plaintiff in error to quash the indictment on the ground that it was insufficient to advise plaintiff in error as to the nature of the charge; that the allegations in the charging part of each count were mere conclusions and were not sufficient to sustain a verdict; that no attempt was made to describe the instrument used, which it was alleged was to the grand jurors unknown; that the allegation that the instrument was to the grand jurors unknown was sufficient, but the indictment should further have

stated in specific terms in what manner the instrument was used, what acts plaintiff in error was charged with doing and the manner of doing the same, so that he would be advised as to what he must meet on the trial.

The indictment was under paragraph 581 of chapter 38, (Smith's Stat. 1929, p. 1046,) which provides: "Whoever attempts to commit any offense prohibited by law, and does any act towards it but fails, or is intercepted or prevented in its execution, where no express provision is made by law for the punishment of such attempt, shall be punished, when the offense thus attempted is a felony, by imprisonment in the penitentiary not less than one, nor more than five years; in all other cases, by fine not exceeding $300, or by confinement in the county jail not exceeding six months."

The indictment was in three counts. The first two in substance charged that Donaldson and Harris on December 19, 1928, did then and there unlawfully, willfully, maliciously and feloniously with a certain instrument, a further description of said instrument being to the grand jurors unknown, attempt to enter a certain showcase with intent to steal, take and carry away certain jewels and diamonds, (the value of each piece being stated, the total value being over $15,) the property of Fichel D. Pennes, but that they failed to steal, take or carry away the goods and chattels aforesaid. The third count is substantially the same as the first two, except that it omits any allegation as to the failure to secure the property.

Several cases are cited by plaintiff in error in support of his contention that the indictment is insufficient, but those cases are not controlling. Paragraph 716 of chapter 38 (Smith's Stat. 1929, p. 1061,) provides: "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statute creating the offense, or so plainly that the nature of the offense may be easily understood by the jury." Where a statute clearly defines

an offense, an indictment charging the offense substantially in the language of the statute is sufficient, and one good count in an indictment is sufficient to sustain a verdict. (*People* v. *Lloyd,* 304 Ill. 23.) An indictment is sufficient if the defendant is so notified of the charge as to be able to prepare his defense and the jury can understand the offense and the court pass sentence in case of conviction. (*People* v. *Cohen,* 303 Ill. 523; *Glover* v. *People,* 204 id. 170.) In an indictment charging an attempt to commit larceny it is essential that it charge that an attempt was made, that some overt act was done towards the commission of the larceny, and that the person making the attempt failed in the perpetration of the offense or was intercepted or prevented in its execution. (*People* v. *Purcell,* 269 Ill. 467.) In *People* v. *Cohen, supra,* on page 525, it was said: "Great niceties and strictness of pleading should only be countenanced and supported when it is apparent that the defendant may be surprised on the trial, or unable to meet the charge or make preparations for his defense for want of great certainty or particularity. (*Cannady* v. *People,* 17 Ill. 158.) The criminal law is fast outgrowing those technicalities which grew up when the punishment for crime was inhuman and when it was necessary for the courts to resort to technicalities to prevent injustice from being done. Those times have passed, for criminal law is no longer harsh or inhuman, and it is fortunate for the safety of life and property that technicalities to a great extent have lost their hold."

Under the provisions of the statute upon which this indictment was based it was necessary that the indictment allege an attempt to commit an offense prohibited by law, some overt act towards its perpetration, and that there was a failure to accomplish the purpose. The first and second counts charge that plaintiff in error did then and there willfully and maliciously, with a certain instrument, attempt to open a certain showcase with intent to steal the property therein contained. The allegation of the attempt to open

is an allegation of an overt act. The attempt to open manifestly required action done to perpetrate the offense. If there was an attempt to open there must have been some overt act on the part of the person making the attempt. In *White* v. *People*, 179 Ill. 356, it was said: "An attempt in any form to commit an offense is within the statute, and the particular manner in which the attempt was made need not be pointed out in the indictment." An overt act was alleged, and in this respect the indictment was sufficient. The statute does not require, neither do the cases hold, that it is essential to describe the instrument used in the attempt. The first and second counts alleged all of the elements necessary to constitute a valid charge. The third count was defective in failing to allege that the attempt was not successful. There were two valid counts, they were sufficient to sustain the verdict, and the court was not in error in refusing to quash the indictment.

It is insisted by plaintiff in error that there is no evidence in the record even tending to establish his guilt. The evidence shows that on December 19, 1928, Fichel D. Pennes had a jewelry store on the second floor of the building at 234 East Main street, in Galesburg. At the foot of the stairs leading to this store was a showcase about twenty-four inches long, sixteen inches wide and six inches deep. It was fastened to the wall and the door was secured by three padlocks. In the case were diamonds and jewelry of the value of $1500. Just prior to the Christmas holidays it was the custom to leave the jewelry in the case during the evening after dark. Frank Donaldson lived with his family at 201 Faraday street, in Peoria. He ran a restaurant at 3410 South Adams street and owned a garage adjacent thereto, which he rented. James A. Harris came to the restaurant on several occasions for lunch and they had been acquainted about ninety days. On December 19, 1928, Harris asked Donaldson if he did not want to ride with him in his car to Galesburg. They left Peoria about 4:30 P. M.

and arrived in Galesburg about 7:00 o'clock, which was after dark. Donaldson testified that Harris was reputed to be a gambler; that he went to Galesburg to get into a poker game, but witness did not intend to play. When they arrived in Galesburg they drove into the business district. They stopped twice, and Harris got out and was gone a few minutes each time. The third stop was made in front of the Pennes jewelry store. The car was parked at the curb within twenty feet of the case in question. Stores in the vicinity were lighted and automobiles were parked near by. When Harris got out of the car he told witness to get into the driver's seat, as he expected him to drive on the way home. Witness got into the driver's seat, where he remained until he was arrested. Harris went up the stairway leading to the jewelry store.

Directly across the street from the jewelry store was the store of Kellogg & Drake. The store was closed but the windows were lighted. George L. Long, who was the office and credit manager of this firm, testified that just before 7:00 o'clock on the evening in question he went into the store. He was there a few minutes and went to the door and watched people who were passing. His attention was attracted by the peculiar actions of a man who was standing in the Pennes stairway. The man was walking back and forth, looking in both directions up and down the street. If anybody came along the street he stood still. If nobody came along he went to the showcase and put his hand on the top, apparently tinkering and pulling at something. Long went to the telephone and called the police. The man in the stairway went to the car in which Donaldson was sitting and sat down in the right front seat. The motor was running. In a few minutes a police car arrived containing the chief of police and several officers. The chief of police went to the car in which Donaldson and Harris were sitting. Donaldson was behind the wheel and Harris was on the right-hand side. The chief testified that the

motor was running. He asked them where they belonged, and they told him they lived in Galesburg and named the street upon which they lived. He told them he did not know them and they would have to go to the police station. They got out of the car, were put into the police car and were taken to the station. The chief drove the Harris car to the station. In the front seat he found a loaded revolver and a punch. On the floor between the seats he found a wrecking bar, and under the back seat he found a clip containing cartridges which fit the revolver. He testified that a key was taken from Harris which fitted the locks on the jewelry case. Long testified that after the two men were taken to the police station he went to the jewelry store and he and Pennes went down-stairs and examined the showcase. They found that two of the padlocks had been removed and one of them was bent. The padlock at the top of the showcase was still in place and prevented the opening of the door. There were marks on the wooden frame which had been made by some heavy instrument. Pennes testified that he put the showcase up about 8:00 o'clock on the morning in question. In the evening about 6:00 o'clock he went to supper, and when he went out he looked to see if it was in order.

Donaldson testified that he did not get out of the car after they arrived in Galesburg. When they stopped in front of the Pennes store Harris went up-stairs and was gone about five minutes. He then came down-stairs, stood in the hallway about a minute, went over and got into the car, and they were arrested a few minutes later. He denied that Harris was peering up and down the street when he was standing in the hallway. He testified that Harris said he always carried a gun in his car. He denied that he knew anything about the key or the articles found in the car with the exception of the wrecking bar. He testified that some time after the event he looked at the showcase and found no marks upon it. He denied that he told

the chief of police he lived in Galesburg. This was the only evidence offered in defense except that of one witness who testified that the top of the showcase could not be seen from across the street.

The contention of plaintiff in error that there is no evidence in the record even tending to establish his guilt is based upon the fact that he did not get out of the car while it was in Galesburg and took no active part in the attempted crime. Our statute provides that an accessory is one who stands by and aids, abets and assists in the perpetration of the crime, and that an accessory shall be considered as a principal and punished accordingly. (*People* v. *Taylor,* 319 Ill. 174; *People* v. *Cione,* 293 id. 321.) Even if plaintiff in error did not get out of the car, if he stood by and aided, abetted and assisted Harris in the attempted perpetration of the crime he was guilty as a principal and should be punished accordingly. One of the modern methods of committing a crime is by automobile, leaving the driver at the wheel with the engine running while confederates enter the place and commit the crime. If the evidence of Long is to be believed, Harris attempted to break into the showcase. The guilt or innocence of Donaldson is to be determined from all of the facts and circumstances surrounding the case. The criminal intent may be manifest by the circumstances connected with the perpetration of the offense without any specific testimony as to such intent. (*People* v. *Yuskauskas,* 268 Ill. 328.) The question as to whether Donaldson was innocent or was guilty of taking part in the perpetration of crime was a question of fact to be determined by the jury. The jury were the judges of the weight to be given to the testimony, and a reviewing court will not substitute its judgment for that of the jury where no prejudicial error has been committed and the verdict does not appear to be the result of passion and prejudice. (*People* v. *Lewis,* 313 Ill. 312.) Where the evidence is conflicting, depending upon the credibility of the opposing

witnesses, a verdict will not be disturbed unless it is so palpably against the weight of the evidence as to indicate that the verdict was based on passion or prejudice. (*People* v. *Carrico,* 310 Ill. 543.) It is the province of the jury to determine which set of witnesses is telling the truth. (*People* v. *Harrison,* 318 Ill. 316.) If the jury believed the testimony offered on behalf of the People,—and we see no reason why they should not do so,—they were justified in finding that plaintiff in error was guilty as charged. This court is not justified in reversing the judgment on the ground that the guilt of plaintiff in error was not established beyond a reasonable doubt.

The sixth instruction given on behalf of plaintiff in error told the jury that he was a competent witness in his own behalf, and it correctly announced the rule as to the manner in which his testimony should be weighed by the jury. It concluded by stating that "the jury are at liberty to give his evidence credence and weight and act upon it to the extent of the acquittal of the defendant." The court struck out this last sentence, and this is assigned as error. The instruction as given announced a correct rule of law and the modification did not constitute reversible error. The seventeenth instruction offered on behalf of plaintiff in error and refused was with reference to the presumption of innocence and the burden of proof. The substance of this instruction is fully covered by the fifth, seventh, ninth and thirteenth given instructions. The eighteenth and nineteenth refused instructions were also with reference to the burden of proof, and they were covered by the fifth, seventh, ninth, tenth and twelfth instructions given.

We find no reversible error, and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*