Kern Brennan et al., Plaintiffs in Error, *v.* The People of the State of Iillinois, Defendants in Error.

### ERROR TO KANE.

A prisoner is entitled to a change of venue as a matter of right, and this may be granted on oral application if assented to by the State's attorney. Objections to a change of venue should be made in the circuit court.

A plea in abatement to the finding of a bill should specifically set forth the grounds of objection.

Where a party was followed by a crowd and killed, it is proper to interrogate a witness who observed their operations, whether he discovered any difference of purpose among those composing the crowd.

An accessory before the fact is one who stands by and aids, abets, or assists, in the perpetration of a crime, or who, not being present, has advised or encouraged the perpetration of it. The advice or encouragement may be by words, act, signs, or motions.

An accessory before the fact is deemed a principal, and may be punished accordingly.

A person may be guilty of murder although he took no part in the killing, nor assented to any arrangement having for its object the death of another, if he combined with those who committed the deed to do an unlawful act, such as to beat or rob, and death ensued in consequence of the attempt to execute the common purpose.

If several persons conspire to do an unlawful act, and death happens in the prosecution of the common object, all are alike guilty of the homicide. The act of one is the act of all, although some are not present.

Brennan et al. *v.* The People.

It does not follow, because a witness makes an untrue statement, that his entire
testimony is to be disregarded. This must depend upon the motive of the
witness. The maxim of *falsus in uno*, &c., should only be applied to cases
where a witness wilfully gives false testimony.

A person indicted for murder may be found guilty of manslaughter, and such
finding amounts to an acquittal of the charge of murder, and the accused can-
not again be put on trial for murder.

A verdict of acquittal or conviction is a bar to a subsequent prosecution for
the same offence, although no judgment has been entered upon it.

In an indictment for murder, and a verdict found for manslaughter, if the ac-
cused seeks and obtains a new trial, he will only be tried for the offence of
which he was found guilty.

THE facts of this case are stated in the opinion of the court.
This cause was tried at May term, 1854, of the Kane Circuit
Court, J. G. WILSON, presiding.

HOYNE, PLATO, and FARNSWORTH, for plaintiffs in error.

WALLACE & BLACKWELL, for the people.

TREAT, C. J.  An indictment for the murder of Albert Story
was found against Kern Brennan, James Tewey, Michael
Tewey, Martin Ryan, and eight other persons, at the Novem-
ber term, 1853, of the La Salle circuit court. The defendants
were arraigned during the same term, and pleaded not guilty to
the indictment. The record then recites : " And the defendants,
Kern Brennan, James Tewey, Michael Tewey, and Martin
Ryan, by their counsel, move the court for a change of venue
herein ; and on consideration, it is ordered by the court, that a
change of venue be had herein, as to said last-named defend-
ants, to the Kane county circuit court." It does not appear
that any application in writing was made for a change of venue.

At the February term, 1854, of the Kane circuit court, by the
leave of the court, the defendants filed the following plea, which
they swore to be true, in substance : " And now come the said
defendants, Kern Brennan, James Tewey, Michael Tewey, and
Martin Ryan, and having heard the said indictment read, say
that the same, as it is exhibited against them, was not found
and presented to any court having jurisdiction of the said
offence, by a regularly appointed and constituted grand-jury
under the laws of the State of Illinois, as appears by the records
of said court, and this they are ready to verify ; wherefore they
pray judgment, and that by the court here they may be dis-
missed from the said premises, and that the same may be
quashed." The court sustained a demurrer to the plea ; and
the prisoners were then put upon their trial. The jury found

Kern Brennan, James Tewey, and Michael Tewey guilty of the murder of Story. They also found Martin Ryan guilty of manslaughter, and fixed the period of his imprisonment in the penitentiary at eight years. The record then recites : "Thereupon come the defendants, and move for a new trial herein; and the court being advised, sustains the motion, and grants a new trial."

The same defendants were again put upon their trial for the murder of Story, at the May term, 1854. It appeared in evidence, that a large number of persons assembled at the store of Story ; that he became alarmed and left the store, and was pursued by the crowd to his barn, where he was killed. The court, against the objection of the prisoners, permitted the prosecution to ask one of the witnesses if he saw "any indication of a difference of opinion or purpose among the persons composing the crowd who rushed to the barn;" and he answered that he did not.

The court gave the following instructions, at the instance of the prosecution : —

"4. An accessory before the fact is one who stands by and aids, abets, or assists in the perpetration of a crime, or who, not being present, hath advised or encouraged the perpetration of a crime.

"5. The advice or encouragement that may make one an accessory to crime need not be by words, but by any word or act, sign or motion, done or made for the purpose of encouraging the commission of a crime.

"6. An accessory before the fact under the law is deemed and considered as principal, and is to be punished accordingly."

The court refused the following instructions, asked by the prisoners : —

"18. To aid, abet, and assist another who is guilty of killing a human being, so as to make it murder or manslaughter in those aiding, it is necessary that the jury should be satisfied by proof, that those aiding were united with those actually killing in some common design, of which the offence formed a part; that the killing of Story happened and was caused in pursuance of such design; that the killing was not upon some other account from malice prepense in those actually killing, of which intention the prisoners were ignorant.

"19. If the jury believe that the witness Anthony testified falsely in any one material matter, then they have a right to disregard his testimony as to all other matters.

"20. If the jury do not believe from the evidence, that the prisoners on trial are the persons who actually killed Story, they

should be acquitted, unless the proof establishes beyond a reasonable doubt the fact that they were standing by aiding, abetting, and assisting such person or persons as actually caused the death.

"21. If the jury believe from the evidence, that there was no intent on the part of the persons to kill Story, (and who killed him,) until he got to the barn, and that the prosecution has failed to show, by proper evidence, that the prisoners on trial had such intent to kill, or concerted or agreed with the persons who killed Story, before or at the time he was so killed, in such intent, the jury should acquit the prisoners.

"22. If the jury believe from the evidence, that the prisoners did not participate in any design to take the life of Story, but that it was taken by other persons without their consent, knowledge, or intent, and that such life was not taken in pursuance of any previous design formed between the prisoners and those killing, then the law will not hold them as aiders and abettors to the fact of killing, unless they had engaged and advised the perpetration of the act, or took part in the act of killing.

"23. It is essential for the prosecution first to establish by proof the killing of Story by some one of those charged in the indictment, with malice express or implied, to constitute murder; and if the jury are not satisfied beyond a reasonable doubt that such killing was with malice, the jury cannot find any person charged in the indictment guilty of the crime of murder."

The jury found the four prisoners guilty of murder, and sentence of death was passed upon them.

1. By the statute a prisoner is entitled to a change of venue as a matter of right, upon filing a petition verified by affidavit, stating that he cannot receive a fair and impartial trial in the county where the indictment is found, because of the prejudice of the judge of the circuit, or of the inhabitants of the county. It is insisted that the Kane circuit court was without jurisdiction of the case, because no petition was presented disclosing the existence of one of the causes specified in the statute. This question was, in effect, settled in the case of The People *v.* Scates, 3 Scam. 351. In that case, the prisoner made an oral application for a change of venue from the circuit, which was assented to by the State's attorney; and the court made an order changing the venue accordingly. The court to which the venue was changed refused to take cognizance of the case, and dismissed it from the docket. This court held that the circuit court had acquired jurisdiction of the case, and by mandamus compelled it to proceed to hear and determine the same. The decision was put upon the ground, that it was competent for

the prosecution to admit the existence of a cause for the change of venue, and thereby dispense with any necessity for a petition and affidavit; and that the prisoner, after making the application, could not complain that he was not compelled to make as full proof as the prosecution might have required. In this case, the prisoners applied for and obtained a change of venue. They cannot object that it was granted upon insufficient proof. If any error was committed by the court, it certainly was not to their prejudice. They cannot complain of what was done at their instance. Even if the venue was improperly changed to Kane county, the error has been waived by the prisoners. The statute provides, that " all questions concerning the regularity of proceedings in obtaining changes of venue, and the right of the court to which the change is made to try the cause and execute the judgment, shall be considered as waived after trial and verdict." The prisoners made no objection in the court below on account of the change of venue. Failing to urge the objection there, they are concluded by the statute from making it in this court. See Gardner *v.* The People, 3 Scam. 83 ; Hitt *v.* Allen, 13 Ill. 592.

2. The plea in abatement was clearly defective. It was too general and indefinite in its allegations. It did not disclose the particular grounds upon which the prisoners relied. It should have set forth those grounds specifically, so that the prosecution might know what to admit or traverse. It should have distinctly stated why the presentment was not legally made; as that the grand-jurors were not sworn, or that sixteen of their number were not present when the case was heard, or that less than twelve concurred in finding the bill.

3. The question propounded to the witness was proper. It called for facts, and not for the opinions of the witness. It appeared from the evidence, that Story was followed by a crowd and killed. It was important to show with what intent the crowd pursued him. This was clearly a part of the *res gestæ*. It was competent to ascertain this intention, by interrogating witnesses who observed the operations of the crowd, whether they discovered any difference of purpose among those composing it. If they did not, the jury might infer that all were engaged in one common object. And if that object was to take the life of Story, then all concerned were equally guilty of the homicide.

4. There is no valid objection to the fourth and sixth instructions, given at the request of the prosecution. These instructions are substantially in the language of section 13 of the criminal code, and they convey precisely the same meaning.

That section reads : " An accessory is he or she, who stands by and aids, abets, or assists; or who not being present, aiding, abetting, or assisting, hath advised and encouraged the perpetration of the crime. He or she who thus aids, abets, or assists, advises or encourages, shall be deemed and considered as principals, and punished accordingly."

Nor is there any good objection to the fifth instruction. It asserts a plain legal proposition. It is not necessary that the advice or encouragement should be by words. It may be as effectually given by signs or motions as by words or writing. It is enough that a party by his acts incites or counsels another to commit the crime ; in other words, that he intentionally encourages its perpetration.

5. There is a fatal objection to the eighteenth, twenty-first, and twenty-second instructions asked by the prisoners. These instructions required the jury to acquit the prisoners, unless they actually participated in the killing of Story, or unless the killing happened in pursuance of a common design on the part of the prisoners and those doing the act to take his life. Such is not the law. The prisoners may be guilty of murder, although they neither took part in the killing, nor assented to any arrangement having for its object the death of Story. It is sufficient that they combined with those committing the deed to do an unlawful act, such as to beat or rob Story; and that he was killed in the attempt to execute the common purpose. If several persons conspire to do an unlawful act, and death happens in the prosecution of the common object, all are alike guilty of the homicide. The act of one of them done in furtherance of the original design, is, in consideration of law, the act of all. And he who advises or encourages another to do an illegal act, is responsible for all the natural and probable consequences that may arise from its perpetration. 2 Hawk. P. C. ch. 29 ; 1 Hale, P. C. ch. 34; 1 Russell on Crimes, 24; 1 Chitty, Criminal Law, 264.

The 19th instruction was erroneous. It authorized the jury to discredit the witness altogether, if he swore falsely in a single particular. It does not follow, merely because a witness makes an untrue statement, that his entire testimony is to be disregarded. This must depend upon the motive of the witness. If he intentionally swears falsely as to one matter, the jury may properly reject his whole testimony as unworthy of credit. But if he makes a false statement through mistake or misapprehension, they ought not to disregard his testimony altogether. They should not consider the circumstance further than as showing inaccuracy of memory or judgment on the part of the

witness.    The maxim *falsus in uno falsus in omnibus* should only be applied in cases where a witness wilfully and knowingly gives false testimony.

The 20th instruction was also erroneous.    It required the jury to acquit the prisoners, if they were not present when the murder was committed, although they may have advised or encouraged it to be done.    The law is clearly otherwise.    One who counsels or procures another to commit a crime, although he may be absent when the act is done, is equally guilty with the one perpetrating it.    By the express provisions of our statute, he is deemed to be a principal offender, and may be indicted and punished as such.

The 23d instruction was clearly erroneous.    It compelled the jury to acquit the prisoners, unless it appeared from the evidence that the life of Story was actually taken by some one of the persons indicted.    This is not the law.    The prisoners might well be convicted of the homicide, if the fatal blow was given by a person not named in the indictment, provided they were present aiding or abetting him, or, if absent, had advised or encouraged him to do the act.

6. Was the prisoner, Ryan, properly put upon his trial a second time for the murder of Story?    An indictment for murder embraces the charge of manslaughter.    The lesser is included in the greater accusation.    On such an indictment, the jury may find the prisoner guilty of manslaughter.    And such a finding amounts to an acquittal of the charge of murder. The finding of the inferior is necessarily a discharge of the superior offence.    Ryan was regularly put upon his trial on the indictment, and was found guilty of manslaughter.    In contemplation of law, the jury rendered two verdicts as to him; one acquitting him of the murder of Story; the other convicting him of the manslaughter of Story.    He was thus legally tried for the offence of murder and acquitted.    It is perfectly clear that he could not again be put in jeopardy on the same charge, unless that acquittal was set aside at his instance.    A verdict either of acquittal or conviction is a bar to a subsequent prosecution for the same offence, although no judgment has been entered upon it.    Mount *v.* The State, 14 Ohio, 295; The State *v.* Norvell, 2 Yerger, 24; Hunt *v.* The State, 25 Miss. 378. It does not appear from the record, that Ryan has ever waived the benefit of the verdict of acquittal.    It is true that he united with the other prisoners in asking for a new trial, but that application as to him must be regarded as extending only to the charge upon which he was convicted.    He had no occasion for another trial, except as to the charge of manslaughter.    Being

legally acquitted of the charge of murder, he surely did not desire that to be again investigated. It is not to be presumed that he would voluntarily place himself in peril upon a charge, on which he had already been tried and acquitted. Even if the court, upon his motion, could open the whole case, the record does not show that such a power was either invoked or exercised. The application for a new trial did not necessarily relate to the charge upon which he was acquitted. It naturally referred to the charge on which he was convicted. Nor did the court, in terms, set aside the entire finding of the jury. It simply granted the prisoners a new trial. The order was no broader than the application. There were two distinct findings as to Ryan, and, therefore, there was not the least necessity for disturbing the one acquitting him of murder. The one might be set aside, and the other be allowed to stand. The verdict was not an entire thing, which should wholly stand or fall. This view gives full effect to the order of the court. There was still a charge upon which Ryan could be again tried. This view of the question is sustained by adjudged cases. The case of Campbell *v.* The State, 9 Yerger, 333, is strongly in point. The prisoner was tried upon an indictment containing three counts. He was acquitted on the first and third counts, and convicted on the second. He entered a motion for a new trial, and the court, in sustaining it, set aside the entire finding of the jury. On the second trial, he objected to being tried on the counts upon which he had been acquitted; but the court ordered him to be tried on the whole indictment. On this trial, he was acquitted on the first and second counts, and convicted on the third. On error, it was held that he was entitled to judgment of acquittal upon the first and third counts, because as to them he was legally discharged on the first trial; and that he was entitled to the same judgment on the second count, because as to that he was acquitted upon the second trial. The court remarked: " It is not necessary to determine how far a party could be held, even to an express waiver of the benefit of a verdict of acquittal. It is enough, that in this case he has not done so. He moved for a new trial. We are not to suppose his application was more extensive than his necessities. As he had been acquitted upon two counts, he could have no motive to ask for another trial, except upon the one on which he was found guilty; and we are not to understand his application as going further. But the record shows that the judge, in granting a new trial, set aside the verdict. This was error; it improperly revived the proceedings upon those counts upon which he was acquitted. But although they were improperly revived, it was

error to try the defendant a second time upon them. Having been once tried upon all the counts and acquitted of some of them, to try him again upon the same counts, would be putting him in jeopardy a second time for the same charge." The same doctrine is recognized in the cases of Slaughter v. The State, 6 Humph. 410; Morris v. The State, 8 S. & M. 762; and Hunt v. The State, 25 Miss. 378.

In the opinion of the court, Ryan was improperly tried a second time for the murder of Story. He had previously been tried for that offence, and his innocence legally established. The verdict of acquittal remained in full force; and he could not again be put in jeopardy on the same charge, without the violation of an express provision of the constitution.

The judgment as to Ryan must be reversed, and the cause will be remanded. He may still be put upon his trial on the charge of manslaughter. As respects the other prisoners, the judgment must be affirmed.

*Judgment affirmed.*