---

(No. 15565.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PRESTON O. CARRICO, Plaintiff in Error.

*Opinion filed December 19, 1923—Rehearing denied Feb. 7, 1924.*

1. CRIMINAL LAW—*a defendant may be tried second time for manslaughter although indicted for murder caused by abortion.* A defendant indicted for murder caused by an abortion may be convicted of the lesser offense of manslaughter, and although such conviction is, in effect, an acquittal of the murder charge so that he cannot again be tried for murder, it is proper, on allowing a new trial, to try the defendant again for manslaughter under the same indictment.

2. SAME—*expert witness may testify that death was caused by infection from abortion.* In a prosecution of a defendant for manslaughter where death resulted from an abortion, it is proper for a medical witness who examined the girl before she died to testify that her death resulted from an infection caused by an abortion.

3. SAME—*a witness in describing a competent fact should use only such phraseology as is necessary to describe the fact.* A competent witness, in describing what he finds as a physical fact, as to which testimony is properly admissible, should use only such phraseology as is necessary or ordinarily employed for the description of such fact.

4. SAME—*when comment of court as to partisanship of witness will not reverse.* A judge should express no opinion concerning the veracity of a witness, the weight of the evidence or the merits of the case, but a comment of the court in a trial for manslaughter in producing an abortion, to the effect that a particular witness who had testified that the deceased girl had suffered an abortion was not a partisan in the case, will not necessitate a reversal of the defendant's conviction where the testimony of the witness does not connect the defendant with the crime.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. WALTER BREWER, Judge, presiding.

CLARK & HUTTON, and ACTON, ACTON & SNYDER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, CHARLES H. FLETCHER, State's Attorney, and GEORGE C. DIXON, (HARRY I. HANNAH, of counsel,) for the People.

Per CURIAM: Plaintiff in error was indicted for murder at the April term, 1922, of the circuit court of Coles county. Several counts of the indictment charged murder by abortion by the use of instruments, and certain other counts charged murder by abortion by means of drugs. At the April term the case was tried and the jury were unable to agree. The case was again tried at the following October term, and the jury returned a verdict of guilty of manslaughter. On motion of defendant a new trial was allowed, and at the April term, 1923, the jury found him guilty of manslaughter and also found his age to be sixty-five years.

While the indictment in this case is unnecessarily prolix, it is clearly sufficient to sustain a conviction for murder under section 3 of the Criminal Code or a conviction for involuntary manslaughter under section 145. The latter section provides: "Involuntary manslaughter shall consist in the killing of a human being without any intent to do so, in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner." There is a proviso added to this section which states "that where such involuntary killing shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be mur-

der," and plaintiff in error contends that this proviso prohibits a conviction for manslaughter in this case because criminal abortion is made a felony by the laws of this State. It is true that plaintiff in error might have been convicted of murder under either section 3 or section 145, but it is well settled that he cannot complain because the jury convicted him of the lesser offense of manslaughter. The verdict finding him guilty of manslaughter on the second trial in effect found him not guilty of murder. A new trial having been granted he could not again be placed on trial for murder but he could be tried for manslaughter. (*Brennan* v. *People,* 15 Ill. 511.) The law is well settled in this State that where death results from a criminal abortion the person committing the act resulting in the death may be placed upon trial for manslaughter in the first instance, (*Yundt* v. *People,* 65 Ill. 372,) or he may be convicted of manslaughter under an indictment for murder. (*Earll* v. *People,* 73 Ill. 329; *Howard* v. *People,* 185 id. 552.) The contention of plaintiff in error that he could not be put on trial for manslaughter under the indictment charging murder, after he had been granted a new trial under the circumstances appearing in this record, is without merit. The indictment charged manslaughter and the evidence offered by the People sustained the charge.

The conclusion of this court heretofore on this matter is not controlled or seriously modified by cases from other jurisdictions, such as *Walker* v. *State,* 123 Miss. 517, *Parker* v. *State,* 22 Tex. App. 105, and *State* v. *Pruett,* 27 N. M. 576. In this last case the argument contended for is given an exhaustive examination with a full review of authorities, but a review of these authorities will show that the facts and the law in the special cases are different from those presented here, and it is clear that the doctrine in the *Pruett case,* even if admitted, is not directly applicable here, for there the defendant was indicted for murder and twice convicted of voluntary manslaughter. On the third trial

he was convicted of involuntary manslaughter, and the court held that this was an acquittal of all higher offenses, and that the facts proved could not convict of involuntary manslaughter as defined by the statute. As we construe the Illinois statutes, they do not take the offense here charged out from under the definition of manslaughter, but define this and similar offenses, under certain conditions, to constitute also the more serious offense of murder. The greater offense includes the lesser. If the two offenses are so different, as contended by counsel for plaintiff in error, it would be practically impossible to support a conviction of manslaughter as the result of an indictment and trial for murder, yet under the wording of the statute the legality of such action is fully established.

We do not think there is any basis for the contention of counsel for plaintiff in error that the instructions given by the trial court in any way tended to intimate that the plaintiff in error was on trial for murder. Reading all the instructions together, we think it is very clear that under the court's instructions plaintiff in error could not be convicted of murder but only of manslaughter; and we do not think the jury could have been misled by the instructions given on that point, or that there was any error in the refusal or modification of instructions requested by the plaintiff in error with reference to the charge in the indictment. In our opinion the instructions showed with clearness that the plaintiff in error could not on this trial be convicted of murder and that the issue before the jury was that of manslaughter.

The evidence in the case shows that the prosecuting witness, Harley Glenn Hutson, testified to acts of sexual intercourse with Irma Miller, as a result of which she became pregnant. He further testified that on February 23, 1922, he took her to the office of the plaintiff in error, Dr. Carrico, at Ashmore, telling the doctor that the witness' name was Harris and that Irma Miller was his wife but that

they did not desire to have children at that time; that she was then taken into Dr. Carrico's private office, where she remained for some time. Hutson further testified to another similar visit to Dr. Carrico's office at Ashmore on February 28, and to a third visit on March 5. He further stated that at the first visit medicine was given the girl. With reference to the third visit he testified that when he went into the doctor's office he smelled chloroform and saw an instrument. The natural conclusion from his testimony, if it is to be believed, is, that the girl had been operated upon. Hutson at the time of his testimony had an indictment pending against him by reason of the death of Irma Miller and before testifying had been promised immunity from prosecution. The girl died on May 15, 1922, Hutson marrying her several days before her death.

Two physicians called by the State testified that on the basis of their examination of the girl before she died she had been pregnant and that her death resulted from an infection caused by an abortion. The plaintiff in error testified that he never saw Irma Miller in her lifetime and that he had never seen Hutson before the first trial, and that Hutson was not in his office on the days to which Hutson testified. On the other hand, one witness testified to having seen Hutson and a girl in plaintiff in error's office. Another testified to seeing Hutson in a car with a girl and to being asked by Hutson where Dr. Carrico lived. Another testified to seeing Dr. Carrico talking to the occupants of a car on March 5, one of whom was Hutson. Another testified to seeing Hutson in front of Dr. Carrico's office on March 5. To meet this evidence the plaintiff in error called several witnesses, whose testimony as to the time they were with Dr. Carrico does not necessarily conflict with that of the witnesses who supported Hutson's testimony that he visited Dr. Carrico's office with the girl.

Upon a careful consideration of the evidence we are of the opinion that the issue here presented is fully covered

by what was said by this court in *People* v. *Haas,* 293 Ill. 274, on page 275: "The question of the guilt of the defendant was a question for the jury. Where evidence is conflicting, depending upon the credibility of opposing witnesses, the verdict will not be set aside as against the weight of the evidence unless it is so palpably conflicting as to indicate that the verdict was based upon passion or prejudice."

It is further contended by counsel for plaintiff in error that the trial court erred in admitting testimony by physicians to the effect that the infection resulting in the death of Irma Miller was caused by an abortion. It is urged that the witnesses were thus permitted to give opinions on an ultimate fact determinable only by the jury. That there had been an abortion may be, and perhaps is, necessarily a conclusion by medical witnesses from other more detailed facts, but the existence of an abortion is in itself a physical fact and one upon which opinion evidence may be asked of medical men. The mere fact of an abortion is not itself the crime. The physical commission of the abortion is, however, one of the elements of the crime. We do not think it necessary that a competent witness should, in describing what he found as a physical fact, as to which testimony is properly admissible, be required to use phraseology other than that ordinarily employed for the description of such a fact. The evidence submitted in this case we think was properly admitted under the rulings and reasoning of this court in *People* v. *Hagenow,* 236 Ill. 514, and *People* v. *Patrick,* 277 id. 210. The issue here is not the same as that in *People* v. *Schultz,* 260 Ill. 35, where the offense charged was that of rape, and the medical witness was permitted to testify that in his opinion the injury had been occasioned by rape. There the witness was testifying as to the conclusion that the offense charged had been committed; here he is testifying as to one of the physical elements to be proven in order to establish the commission of the offense. We do not think reversible error was commit-

ted by the trial court in admitting the testimony of the medical witnesses that is objected to by plaintiff in error.

It is also urged by plaintiff in error that the trial judge committed prejudicial error in his comments upon the testimony of one of the medical witnesses. At one point the following colloquy took place:

Mr. Lee: "We object. This witness is a partisan in this case.

The court: "No, I don't think so."

At another point, when the same witness was on the stand, the following colloquy took place:

The witness: "Judge, I want it understood that I am no partisan in this case.

The court: "Yes, doctor; I have taken care of that."

We have often said that a judge should express no opinion concerning the veracity of a witness or the weight of evidence and that he should exercise care not to convey to the jury his opinion of the merits of the case. (*People* v. *Lurie,* 276 Ill. 630; *Synon* v. *People,* 188 id. 609; *Lycan* v. *People,* 107 id. 423.) If the witness to whom the judge in this case directed the remarks had been one who was connecting plaintiff in error with the crime it would have been serious error for the judge to indicate that he thought the witness was not a partisan. These two remarks occurred during the examination of Dr. Nathan Starr, who was called to attend Irma Miller during her last illness. He described her condition but did not give any testimony that connected plaintiff in error with the conditions he found. He testified that it was his opinion that the girl had been pregnant and that she had suffered an abortion, but he specifically stated that he could not tell whether it was induced or spontaneous. He stated specifically that he did not find any wounds or lacerations of the genital organs and that the septic poisoning which caused the girl's death might have been introduced from the outside or it might have been created on the inside of the body. It was for the jury and

not the judge to determine whether the witness was a partisan or was interested or prejudiced, and the judge should not have expressed any opinion on that question. Under other circumstances it might have required a reversal of the judgment, but in view of the character of the testimony given by the witness we do not think that plaintiff in error was prejudiced by the statements of the judge.

While the evidence is conflicting, two juries who saw and heard the witnesses have found plaintiff in error guilty of the criminal act charged. We find no error in the record which justifies setting aside the judgment of conviction, and it is therefore affirmed.    *Judgment affirmed.*