(No. 19625.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AMANTE RONGETTI, Plaintiff in Error.

*Opinion filed December 20, 1929—Rehearing denied Feb. 19, 1930.*

FARMER, C. J., and STONE, J., dissenting.

WM. SCOTT STEWART, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

This writ of error is prosecuted to review a record of the judgment of the criminal court of Cook county whereby plaintiff in error, Amante Rongetti, stands convicted of the crime of manslaughter. A former trial resulted in a conviction for murder, which was reversed and the cause remanded at the October, 1928, term of this court, the opinion in which cause is reported as *People* v. *Rongetti,* 331 Ill. 581, to which opinion reference is made for a full statement of the pleadings and the evidence adduced by the prosecution.

It is contended by plaintiff in error that under the indictment in this case a verdict of guilty of manslaughter

was not proper and that the only verdict which could be rightfully found was guilty of murder or not guilty. The law is well settled in this State that where death results from a criminal operation of the character charged in the indictment herein the person committing the act resulting in the death may be placed upon trial for manslaughter in the first instance, (*Yundt* v. *People,* 65 Ill. 372,) or he may be convicted of manslaughter under an indictment for murder (*People* v. *Carrico,* 310 Ill. 543; *Hagenow* v. *People,* 188 id. 545; *Howard* v. *People,* 185 id. 552; *Earll* v. *People,* 73 id. 329;) even though the evidence shows him to have been guilty of murder. (*Brennan* v. *People,* 15 Ill. 511.) In the *Earll case* it was said upon this question: "The trial is conducted, in all respects, as is required where a criminal is on trial for murder caused by killing in some other manner, and in the absence of a law prohibiting a verdict of manslaughter we are aware of no reason why a verdict of that character may not be found by the jury as well in a case of this character as under any other indictment for murder."

It is claimed by plaintiff in error that evidence of similar offenses is not competent in cases of this kind, and particularly that the court erred in the admission of evidence in this case with respect to other alleged offenses. Where the intent with which an alleged offense was committed is a material element of the charge and such intent becomes an issue on the trial, proof of former similar offenses, within reasonable limits, is admissible as tending to throw light upon the intention of the accused in doing the act charged and is competent in cases of this character. (*People* v. *Hagenow,* 236 Ill. 514; *People* v. *Schultz-Knighten,* 277 id. 238; *People* v. *Hobbs,* 297 id. 399.) Evidence of other similar offenses, to be competent as proof of guilty knowledge, must show that such alleged similar offenses were, in fact, criminal offenses. (*People* v. *Earnst,* 306 Ill. 452; *People* v. *Perlmutter,* 306 id. 495.) It must be kept in

mind, however, that proof of similar offenses is not admissible to prove that the defendant committed the act charged but is only to be considered by the jury in determining the intent with which the act charged was done, where the jury are satisfied by the other testimony that the defendant committed the act charged in the indictment. The admission of evidence of similar offenses in a case of this character is an exception to the general rule, and unless it is kept within the limitations pointed out by the authorities it might result in denying the prisoner that fair and impartial trial guaranteed by the law and might break down those barriers erected by the law and designed for the protection of the innocent. (*People* v. *Hobbs, supra.*) In the instant case the witness Mrs. Reed, after having testified to the alleged operation upon deceased in this case, was asked this question: "And had you ever seen any operation prior to that time by Dr. Rongetti in that room similar to the one you have described?" and answered, "Yes, sir." The attorney for plaintiff in error made a motion to strike out the answer on the ground that it came as a surprise to him and that he did not have an opportunity to make an objection, and also that it called for a conclusion and an improper comparison, and called for the proof of matters which were immaterial and irrelevant, not tending to prove or disprove the issues in the case. The motion to strike the answer was denied, and over the objection the witness was allowed to testify that she had witnessed three or four operations of that sort while she was in attendance at the hospital; that she did not know the names of any of the persons upon whom those operations were performed, and that in each one of the cases she did not determine from the doctor the circumstances surrounding the case so that she could make up her mind whether it was criminal. In response to the question, "As far as you know, then, or had called to your attention, each one of those operations was justified in some way?" she replied: "It made no difference to me whether

they were or not; that was not my business." On cross-examination this witness was asked if at the coroner's inquest this question was not put to her: "Of course, I am not running the police station and I am not trying to force that situation in line. What I am trying to get is this: I want to know the kind of place he ran. I had a fairly good notion of what he was doing there but want you to tell me," and that in reply thereto she answered, "I am not saying anything more about it because I am not sure of anything else." In reply to this question she answered, "I probably did." Following that particular question and answer she said, "I am not sure now." Over the objection of plaintiff in error's counsel these questions and answers were stricken out. This action of the court was erroneous, in that these answers tended to impeach the testimony of the witness given upon the present trial. The court also erred in denying the motion of plaintiff in error to strike out the answer of the witness Reed that she had witnessed other similar operations, on the ground that the question called for a conclusion and for an improper comparison, and also erred in allowing her to testify to her conclusion and to make general comparisons. The witness should have been required to testify as to the details of each of the operations to which she referred so that the court might be able to judge as to whether or not such operations were criminal, and tended to show a guilty intention on the part of the accused in doing the act with which he was charged by the indictment in this case.

A witness for the prosecution, who had taken the signature of the deceased to the statement mentioned in *People* v. *Rongetti, supra,* as having been made by her upon her admission to the hospital, was allowed to testify, over the objection of the defendant, that she had seen other blanks similar to the one in question in the hospital while she was there. She stated: "I suppose they were all the same; I didn't bother to read any of them." This witness,

having no knowledge of the contents of the papers to which she was testifying, was incompetent to state her conclusion that they were similar to the paper in evidence as having been signed by the deceased.

A coroner's physician testified that he made an autopsy upon the body of the deceased and that he found a triangular punctured wound, about the size of the body of a fountain pen, on the posterior fundus of the uterus which was practically healed; that death was caused by septic peritonitis due to an abortion and that the abortion was not necessary to preserve the life of the deceased. Two other physicians, testifying as experts, in answer to a hypothetical question gave it as their opinions that the hypothetical person came to her death as the result of an abortion and that such abortion was not necessary to preserve her life. It is claimed by plaintiff in error that these opinions were incompetent, and that these witnesses were allowed by the court to invade the province of the jury and determine questions which the jury were impaneled to decide. The autopsy revealed only one puncture of the uterus, and Fitzgerald, a professional embalmer, testified that in embalming the body he made this puncture with his trocar. While plaintiff in error, testifying in his own behalf, gave his opinion that the cause of death was peritonitis following the discharge of a fœtus, he denied that he punctured the uterus, that he performed any operation on the deceased, or that he did anything which could cause her to abort. He was corroborated by the witness Lindquist, the head nurse of the hospital. There was also evidence tending to show that the miscarriage might have resulted from violence which the evidence showed she had sustained prior to her admission to the hospital, and also to the effect that it could be the natural result of diseased conditions of the fœtus, which plaintiff in error described as appearing to have been dead about two weeks prior to its expulsion, and there was also testimony to the effect that peritonitis

might follow the discharge of a fœtus even though the uterus were not punctured or an abortion committed. For some years there was an apparent inconsistency in the decisions of the courts of this State as to the range allowable in the examination of physicians and as to the conclusions which they might state while testifying as expert witnesses, either from facts within their knowledge or in answer to hypothetical questions. There was, however, no real inconsistency when the facts of the cases were closely examined. This was done in *Fellows-Kimbrough* v. *Chicago City Railway Co.* 272 Ill. 71, where, after a careful resume of the authorities, this court, in passing upon what questions were improper as invading the province of the jury and calling for an opinion on an ultimate fact, laid down the following logical rule: "Where there is a conflict in the evidence, as in this case, as to whether or not the party suing was injured in the manner charged, it is not competent for witnesses, even though testifying as experts, to give their opinions on the very fact the jury is to determine. Whether or not the collision or accident in this case caused traumatic neurasthenia in the defendant in error or caused the tumor in her breast are ultimate facts upon which the jury must make their findings. It is no more proper, legally, for physicians to settle those questions for the jury by their direct answers than it would be for a motorman of another street car company to settle the question of negligence by testifying in broad terms that the plaintiff in error was guilty of negligence because its motorman failed to cut off the power by use of the canopy-switch in time to prevent the collision. The rule in such cases is not different where hypothetical questions are put to the expert witnesses. A physician may be asked whether the facts stated in a hypothetical question are sufficient, from a medical or surgical point of view, to cause and bring about a certain condition or malady, or he may be asked whether

or not a given condition or malady of a person may or could result from and be caused by the facts stated in the hypothetical question, but he should not be asked whether or not such facts did cause and bring about such condition or malady. (*Illinois Central Railroad Co.* v. *Smith,* 208 Ill. 608; *Keefe* v. *Armour & Co.* 258 id. 28; *People* v. *Schultz,* 260 id. 35; *Castaine* v. *United Railways Co.* 249 Mo. 195, 155 S. W. Rep. 38; *Sever* v. *M. & St. Louis Railroad Co.* 156 Iowa, 664, 137 N. W. Rep. 937, 44 L. R. A. (n. s.) 1200.) In cases where there is no dispute as to the manner and cause of the injury and no dispute that there was an injury sustained by reason of the acts of which complaint is made, this court has held that a physician may then directly testify that a later malady was or was not caused by the accident or original injury, upon the same principle that he may testify that death resulted from a certain wound.—*Schlauder* v. *Chicago and Southern Traction Co.* 253 Ill. 154; *City of Chicago* v. *Didier,* 227 id. 571." This rule has never been departed from by this court in any case where the question was raised, since that time. (See, also, *People* v. *Schultz, supra; People* v. *Sunesson,* 314 Ill. 402.) The court was in error in allowing the witnesses to invade the province of the jury and to testify as to ultimate facts which were for the jury to determine in this case, where there was a conflict in the evidence as to whether or not deceased was injured in the manner charged and there was a dispute as to the manner and cause of the injury to deceased, if any, and also a dispute as to whether or not there was an injury sustained by her by reason of the acts of plaintiff in error of which complaint was made.

Only one witness gave direct testimony as to the performance of an operation on the deceased by plaintiff in error. If he was guilty, according to her own testimony the witness was also guilty as an accomplice. Plaintiff in

error asked several instructions with reference to the testimony of accomplices, all of which were refused. The court gave to the jury in lieu thereof the following:

"The court instructs the jury that an accomplice is one who is connected with the crime either before, at the time, or after the commission of the offense and if you believe from the evidence that any witness in this case was connected with the crime, if any, either before, at the time, or after the commission of the offense, such witness is an accomplice. The testimony of an accomplice is competent evidence, and the credibility of such accomplice is for the jury to pass upon, as they do upon any other witness; and, while the testimony of an accomplice will sustain a verdict when uncorroborated yet the testimony of an accomplice must be received with great caution; but if the testimony carries conviction, and the jury is convinced of its truth, they should give to it the same effect as would be allowed to a witness who is in no respect implicated in the offense."

This instruction was erroneous as it did not state the law correctly. In *People* v. *Elmore,* 318 Ill. 276, the rule on this subject is laid down as follows: "The testimony of an accomplice is competent, and we have held that a jury may convict on the uncorroborated testimony of an accomplice if it satisfied the jury, beyond a reasonable doubt, of defendant's guilt. We have also held, and the universal rule is, that the testimony of an accomplice is subject to grave suspicion and should be acted upon with great caution. It should be carefully considered by the jury in the light of all the other evidence in the case, also the influence under which the testimony is given, and whether the purpose of the witness is to shield himself from punishment or obtain some benefit for himself. If, all the circumstances considered, such testimony is believed to be true and is of a character to prove guilt beyond reasonable doubt it will authorize a verdict of guilty.—*People* v. *McKinney,* 267 Ill. 454; *People* v. *Rosenberg,* 267 id. 202."

To the same effect are *People* v. *Harvey,* 321 Ill. 361, *People* v. *Johnson,* 314 id. 486, and *People* v. *Aiello,* 302 id. 518. The jury are not to pass upon the testimony of an accomplice as "they do upon any other witness," but they are to consider it as subject to grave suspicion and must act upon it with great caution, and only when they are satisfied from the testimony of such accomplice and all the circumstances in evidence that the guilt of the defendant is proven beyond a reasonable doubt will they be warranted in convicting a defendant on such testimony.

The court, at the request of the State, gave the jury the following instruction:

"The court instructs the jury that in considering the question of whether or not the defendant intended to commit a criminal abortion, as charged in this indictment, you may consider evidence, if any, tending to prove the commission by him of other prior similar offenses, and such evidence, if any, can only be considered by you in determining such question of intent and for no other purpose."

This instruction is erroneous in that it assumed that plaintiff in error did the acts charged, and did not require, as a pre-requisite of the jury's considering the evidence of prior similar offenses, if any, upon the question of plaintiff in error's intention, that the jury should believe from the evidence in the case, beyond a reasonable doubt, that plaintiff in error had committed the acts with which he was charged, in manner and form as alleged in the indictment.

Plaintiff in error offered the following instruction, which the court refused to give:

"The defendant is not here charged with malpractice, criminal neglect, or negligence in the treatment of Loretta Enders after the discharge of the fœtus. So, unless you believe that the State has proven all of the necessary elements of the charge laid in the indictment, you should acquit the defendant, even if you do believe from the evidence that he might have saved the life of Loretta Enders

in some manner neglected by him after the discharge of the foetus."

There was evidence tending to show that the puncture of the uterus of deceased might have been caused by a curettement made after the discharge of the foetus. A witness also testified that after the discharge of the foetus plaintiff in error was asked why, if he thought the deceased had an infection, he did not operate, and that he replied that the people did not have any money. Under this condition of the record the instruction should have been given.

The court refused to instruct the jury that the burden of proof never shifts to the defendant. The defendant in a criminal trial is entitled to the benefit of the presumption of innocence throughout the trial and until the evidence establishes his guilt beyond a reasonable doubt, and the burden of proof does not at any time rest upon him, and this instruction should have been given. *People* v. *Schultz-Knighten, supra.*

It is claimed by plaintiff in error that the verdict is contrary to the evidence. As this judgment must on other grounds be reversed and the cause remanded for a new trial, we do not deem it necessary to discuss this question.

It is claimed by defendant in error that plaintiff in error is guilty and that the judgment of conviction should not be reversed by reason of any errors which may have intervened. We have frequently held that where the evidence is such that the jury could not reasonably have found a verdict other than the one which they did, this court will not reverse for error in the giving or refusing of instructions or for other error not prejudicial in character. The law, however, does not provide one method for trying innocent persons and another for trying guilty persons, as all persons charged with crime are presumed to be innocent until they are proven guilty beyond a reasonable doubt according to the established methods of procedure. (*People* v. *Bimbo,* 314 Ill. 449; *People* v. *Sweetin,* 325 id. 245.)

The constitution guarantees to every person accused of crime, whether innocent or guilty, a fair and impartial trial, and no person should be condemned to penal servitude who has been deprived of this constitutional guaranty. *People* v. *Sweetin, supra.*

We are of the opinion, as the result of our examination of this record, that plaintiff in error has not had that fair and impartial trial according to law and the established rules of criminal procedure to which every person, whether guilty or innocent, is entitled.

The judgment of the criminal court of Cook county will therefore be reversed and the cause remanded to that court.

*Reversed and remanded.*

FARMER, C. J., and STONE, J., dissenting.