(No. 20604.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AMANTE RONGETTI, Plaintiff in Error.

*Opinion filed April 23, 1931—Rehearing denied June 4, 1931.*

WM. SCOTT STEWART, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

The plaintiff in error, Amante Rongetti, (herein called defendant,) was found guilty of manslaughter by a jury in the criminal court of Cook county and sentenced to the penitentiary. He was charged with performing a criminal operation of abortion, this being his third trial on the same charge. On his first trial he was found guilty of murder, but the judgment was reversed and the cause remanded at the October, 1928, term of this court. (*People* v. *Rongetti*, 331 Ill. 581.) The second trial resulted in his conviction of manslaughter, which also was reversed and the cause remanded at the February, 1930, term of this court. (*People* v. *Rongetti*, 338 Ill. 56.) The record of his third trial is brought here for review by writ of error.

It is not necessary that a recital be made of the facts, as a full statement of the evidence and pleadings relied upon by the prosecution is contained in the report of the first trial (331 Ill. 581) and is included herein by reference. When considered pertinent, any new facts or material changes in the testimony occurring at the third trial will be noted later in this opinion.

The defense now relied upon by Rongetti is largely based upon new testimony given for the first time by two witnesses, William Cozzi and Lorraine Irwin, both of whom had testified at the previous trials. Rongetti now contends that Loretta Enders, a short time before she became a patient at his hospital, had visited a midwife for the purpose of

being aborted; that whatever the midwife did to Miss Enders caused her to abort after she had entered his hospital; that when she came to him for treatment she was flowing excessively and menstruating as a result of what the midwife had done to her, as evidenced not only by the testimony of witnesses Cozzi and Irwin but also by her own signed statement, and that the treatment he gave her was not of a character to cause an abortion but was only intended to supplement the treatment she had received at the hands of the alleged midwife and to relieve the patient as soon as possible from the pathological condition he found to exist when he examined her.

Many errors are assigned by the defendant but only those argued in the brief before us will be considered.

It is first contended that the trial court erred in permitting the witness Hazel Reed to testify that in preparing the equipment in the operating room before Loretta was brought in she took out the instruments "we always used in such cases." No objection was made to this question nor was any motion made to strike out the answer. The assistant State's attorney then asked the witness another question which reiterated the substance of the answer just made but the witness did not answer it. It is true that inthe second trial we held it error for the court to refuse to strike out the answer of this same witness that she had seen other similar operations performed by the defendant, on the ground that the question called for a conclusion and an improper comparison, but in the present case no such improper question was asked of the witness, and counsel failed to object to the question complained of and also failed to move to strike out the answer made to it. No error was committed.

The next objection has to do with State's exhibit No. 2, being the statement signed by Loretta Enders while at the hospital, to the effect that she was flowing and menstruating and had been for ten days and relieving Rongetti from any

responsibility in her behalf. This statement was admitted in evidence by stipulation, and the objection now made is that the assistant State's attorney improperly cross-examined Rongetti with reference to the manner in which the statement was taken, asking, "Where did you get this form, doctor?" The objection refers to the errors committed by the State in both the former trials, in the first of which this court held it was error to refuse to permit this statement to be used as evidence, (331 Ill. 581,) and in the second trial it was held to be error for the State to try to prove, without competent evidence, that other blanks similar to the one in question were in the hospital. (338 Ill. 56.) We can see no similarity between the question objected to, "Where did you get this form, doctor?" in the present case and the matters held to be error in the first and second trials. Rongetti's answer was highly favorable to himself, as he stated he dictated the form after an examination of the patient. We do not believe that this question, and the answer elicited by it, harmed the defendant.

It is further averred that the trial judge in this case deprived the defendant of sufficient latitude in cross-examination of the State's principal witness, Hazel Reed, and reference is again made to the two former opinions of this court wherein the trial court's error in this regard was one of the reasons why the former judgments were reversed. Specific mention is made by the defendant of the refusal of the trial court to permit him to ask Mrs. Reed about her husband. There is nothing in the record which would tend to establish any particular importance to the whereabouts or testimony of Mrs. Reed's husband. So far as the record shows, the trial court committed no error in keeping out extraneous evidence concerning the husband of this witness. In this same regard the defendant also claims that error was committed by the court in preventing the questioning of Mrs. Reed·as to her testimony before the coroner. We have examined the record carefully in this regard, and al-

though the witness appeared to be both reluctant and confused, making it difficult for defendant's counsel to bring out a comparison of her former testimony with her statements in the present trial, yet he finally succeeded in making the comparison he desired. The difficulties encountered by counsel for defendant in cross-examining this witness, accentuated by the fact that she had testified before the coroner and in the two former trials of this same case, were finally overcome. Her cross-examination occupies some twenty-two pages of the record, and from a study of it we are of the opinion that the defendant was not unduly restricted by the rulings of the trial court.

It is next contended by the defendant that error was committed in allowing the State to ask a hypothetical question of a physician testifying as an expert. Our holding in the last trial of this case (338 Ill. 56) was that it was error for the court to allow such witness to invade the province of the jury and testify to ultimate facts, where the evidence was conflicting as to the manner and cause of the injury to deceased and also in dispute as to whether she sustained an injury by reason of the acts of defendant. The complaint here is that the hypothetical question did not contain any element concerning the alleged visit of Loretta Enders to the midwife and her excessive flowing. Both of these were matters where the evidence was in direct conflict. Two conflicting theories of fact cannot both be incorporated in any one hypothetical question without producing an indefinite and meaningless answer. The physician to whom the hypothetical question was put was a witness for the State, and it was natural and proper for the State to propound a question which included its own theory of fact and excluded the disputed theories of the defendant. The defendant admits that within reasonable limits the State could assume certain facts to exist according to its theory, leaving it for the jury to determine whether or not the question was based upon the evidence. The failure of the State to

include the disputed facts adduced by the testimony of the defendant's witness Cozzi that Loretta visited a midwife did not make the question an improper one. The answer to this question did not call for the conclusion of the expert concerning any ultimate fact within the province of the jury. The record shows that there was no dispute between the parties as to the cause of Loretta's death. It was the theory both of the State and the defense that she came to her death as a result of a criminal abortion. The defense of Rongetti was not that no abortion had been performed, but that some midwife, rather than he, first treated her and performed the abortion. Under this condition of the record we can see no error in allowing the expert to answer the hypothetical question asked by the State. There was no dispute as to the cause of Loretta's death, and the question did not invade the province of the jury by attempting to answer the only ultimate fact which the jury had to consider,—i. e., who performed the criminal abortion which resulted in her death.

It is also argued by the defendant that prejudicial error was committed by the State in the cross-examination of one of its own witnesses, Cozzi. The State claimed it had been taken by surprise by the testimony of Cozzi that he had taken the deceased to a midwife in order to have her aborted and that she flowed excessively from that time until she went to defendant's hospital. In his direct examination Cozzi had said nothing about any visit to a midwife and this testimony first came to light on his cross-examination by counsel for defendant. The State claimed that it had been taken by surprise and the court allowed the State an opportunity to cross-examine the witness to awaken his conscience. Cozzi was also taken into custody by a police officer, and the two made a futile search for the alleged midwife in the neighborhood where Cozzi said she lived at the time he and the deceased visited her. Both Cozzi and the police officer were put on the witness stand and testified

that they were unable to locate the alleged midwife. The defendant says that this conduct amounted to an impeachment by the State of its own witness. We cannot agree with that contention. Under similar circumstances this court in the recent case of *People* v. *Michaels*, 335 Ill. 590, said: "The rule is, that when a witness unexpectedly gives testimony against the party calling him, such party has the right to examine him and by such examination show that the witness is giving unexpected testimony, and to specifically call the attention of the witness to former statements made by him for the purpose of refreshing his memory or awakening his conscience and cause him to relent and speak the truth if he was lying." In the case at bar nearly all of the examination of Cozzi was outside the presence of the jury. It further appears that this cross-examination by the State was fruitful of results; that his conscience was awakened and that he finally stated that he went to Dr. Rongetti to get rid of the baby because he could not afford it. This testimony amounted to a contradiction rather than an impeachment. (*People* v. *Blevins*, 251 Ill. 381.) In this connection the case of *People* v. *Bernstein*, 250 Ill. 63, cited by the defendant, is not in point, as it holds only that it is improper for the trial judge to conduct a lengthy cross-examination of a witness and states no rule prohibiting such an examination by counsel. The facts presented in the other case cited on this point by defendant (*Carle* v. *People*, 200 Ill. 494,) are not similar to the circumstances of the present case, where the State was taken by surprise after it had finished its direct examination of the witness.

It is further claimed that error was committed by the trial judge in calling Lorraine Irwin to the stand as a court's witness after the prosecutor stated that he was unwilling to vouch for her credibility because she had made recent statements to him which caused him to conclude that she would not testify as she had at the former trials. Defendant insists that Miss Irwin was used by the State only to

appeal to the prejudice of the jury and not with any expectation that her testimony would support that of Mrs. Reed. There were only two eye-witnesses to the operation performed upon Loretta Enders by Dr. Rongetti. These were the two nurses, Mrs. Reed and Miss Irwin. Both had testified for the State at the former trials and their testimony was important and of incriminating character. Since the second trial Miss Irwin had made statements to the prosecutor contradictory of her former statements under oath before the coroner and at the two previous trials. Under these circumstances no error was committed by calling her as a court's witness and in seeking to impeach her by her testimony at former trials. The rule in such cases, as frequently announced by this court, is, that where there is an eye-witness to the crime whose veracity and integrity the State's attorney may doubt, he is not obliged to call such witness but the court may call him and permit cross-examination by either side, such cross-examination to be limited to the issues involved and kept within proper bounds. (*People* v. *Rotello,* 339 Ill. 448; *People* v. *Cardinelli,* 297 id. 116; *People* v. *Curran,* 286 id. 302; *Carle* v. *People, supra.*) In view of the testimony of Miss Irwin at the former trials compared with her contradictory statements subsequently made to the State's attorney, it is not surprising that he was unwilling to vouch for her credibility. She was an eye-witness and her testimony was material. The court did not err in calling her as a witness or in permitting cross-examination as to inconsistent statements made at the present trial as compared with her previous testimony.

Counsel for defendant also argues that the prosecutor did not deal fairly with Rongetti on cross-examination and that the defendant was unduly prejudiced thereby. Rongetti was asked about the custom in the medical profession of calling in a consulting physician in a case such as he had described. The prosecutor also produced a curette before the jury and on cross-examination asked the defend-

ant, "That's a regular abortion curette, isn't it, doctor?" The court promptly struck the question and instructed the jury to disregard it. This instance is also cited to show unfair tactics on the part of the State. It was not improper for the State to attempt to show that the defendant did not follow the usual medical practice or code of ethics by failing to call in a consulting physician. The curette incident was promptly ruled upon by the trial court in defendant's favor. Incidents of similar character are apt to occur in the heated cross-examination of a defendant in any criminal case, and when objectionable testimony is offered or an objectionable remark made which is promptly rejected and stricken by the court, who can say but that the net result of the frustrated effort has not been beneficial to the defendant? The defendant in a criminal case must know that on cross-examination he may not always receive gentle and considerate treatment at the hands of the prosecutor. The cases cited by the defendant in support of his contentions do not present circumstances similar to those before us in the present case. The incidents here complained of did not constitute prejudicial error.

Some of the remarks of the prosecutor in his closing argument are also cited as reversible error. The abstract does not show the entire arguments for the State nor any of the argument made in behalf of the defendant. It is objected that reference was made by the prosecutor in his argument before the jury to Rongetti's two previous convictions. Since the records of the two former trials were continually referred to before the jury in efforts to impeach the testimony of the witnesses, the statement of the prosecutor in his closing argument could not in that respect have been prejudicial. The reference made throughout the trial to the testimony of different witnesses at the former trials was unavoidable. From an examination of this and the other arguments complained of we can find nothing prejudicial to the defendant. The portion of the argument ab-

stracted is supported by the facts and circumstances in evidence and was not improper. *People* v. *Black,* 317 Ill. 603.

Fault is found with certain instructions both given and refused. Instruction No. 20 for the State is admittedly improper and should not have been given, in that it includes attempted abortion. This instruction is identical with instruction No. 2 in *People* v. *Rongetti,* 331 Ill. 581. There it was held that the instruction should not have been given. The part of the instruction referred to (the crime of attempted abortion) should have been stricken from the instruction before it was given. (*People* v. *Levato,* 330 Ill. 498.) While this instruction should not have been given, there is nothing in it sufficient to warrant a reversal of the judgment. Even though one or more instructions are improperly given, this court has repeatedly held that unless they are of such nature as to have resulted in injury to the defendant the fact of having given them is not ground for reversal. (*People* v. *McIntosh,* 242 Ill. 602; *People* v. *Pargone,* 327 id. 463; *People* v. *Talbe,* 321 id. 80; *People* v. *Dean,* 321 id. 128; *People* v. *Patrick,* 277 id. 210; *People* v. *Duzan,* 272 id. 478; *People* v. *Hubert,* 251 id. 514.) While this court in the former trial (331 Ill. 581) said this instruction should not have been given yet it was not condemned there as prejudicial.

Instruction No. 21 is also objected to on the ground that it is erroneous for the same reason as was a similar instruction in the second trial of this case. (338 Ill. 56.) By comparison, however, we find that instruction No. 21 is an entirely different instruction from the erroneous instruction given at the second trial. Further, it was supplemented by another instruction (No. 17) given at the request of the defendant and stating additional law with reference to the testimony of an accomplice. No error was committed in giving instruction No. 21, as it was an exact copy of an instruction heretofore approved by this court. (*People* v. *McGuirk,* 312 Ill. 257.) Instructions Nos. 17 and 21 must

be considered together and were proper, since, taken as part of a series, they informed the jury with substantial accuracy of the law applicable to the issues. *People* v. *Heard,* 305 Ill. 319.

Instruction No. 18 given at the request of the State is also objected to. This instruction defined involuntary manslaughter in the language of the statute. This instruction was properly given, as the jury could find the defendant guilty of manslaughter under an indictment for murder, as was done in the second trial of this case. The giving of such an instruction has heretofore received the approval of this court. *People* v. *Cotton,* 250 Ill. 338; *People* v. *Crawford,* 278 id. 134.

Defendant further charges that the court erred in refusing its instructions numbered 1, 2, 3 and 4. The first three were instructions on reasonable doubt, and the jury were fully instructed on this same subject by defendant's instructions 11, 12 and 16, so the former were properly refused because they were repetitive. (*People* v. *Kessler,* 333 Ill. 451; *People* v. *Gallery,* 336 id. 580.) Instruction No. 4 was so carelessly drawn that it might have confused or misled the jury, and no error was committed in its refusal. *People* v. *Lopez,* 296 Ill. 438.

A number of general objections are made, one being that the evidence was not sufficient to warrant the jury in returning the verdict of guilty. The evidence is undisputed that an abortion was performed on Loretta Enders and that she died as a result thereof. The State contended that Rongetti performed the abortion, and this contention was supported by the testimony of an eye-witness to the operation. The defense, as previously stated, was that Rongetti had only treated the deceased after a midwife had attempted to produce an abortion. The testimony of the different witnesses, including Rongetti himself, was heard by the jury, who also saw the witnesses and observed their demeanor. After a careful review of all the evidence in

the record we are not prepared to say that the verdict is palpably contrary to the manifest weight of the evidence or that the evidence is so unsatisfactory, unreasonable and improbable as to warrant a reasonable doubt of Rongetti's guilt.

This case has been successively tried before three different juries and in each trial they have returned verdicts of guilty. Three judgments have been pronounced upon such verdicts by three different trial judges. In the first trial the defendant was convicted of murder and in the last two trials he was found guilty of manslaughter. This court said, under similar circumstances, in *Rafferty* v. *People, 72* Ill. 37: "This was the third trial of the case, with the same result each time. Neither the prisoner nor his counsel can have any just cause of complaint that this cause has not received at the hands of this court all the patient attention and careful consideration demanded by the great and solemn issues involved. Absolute exemption from error is unattainable. * * * Under the circumstances we do not feel it our duty to set the verdict aside for the irregularity indicated and must affirm the judgment."

Our review of the record in the present trial shows that studious effort was made by the trial judge to avoid error. This was shown by the numerous whispered conferences with the attorneys concerning disputed matters out of the hearing of the jury, and by the frequency with which the jury were excused when debatable points of law or evidence were being considered. After a careful consideration of the disputed questions of law and evidence here presented, uninfluenced by the former convictions, we feel satisfied that the defendant received a fair trial. While the record before us is not entirely free from error, the few errors pointed out were insignificant and not of such character as to warrant a reversal. From the evidence it seems that no other result could have been reached than the verdict of guilty. The judgment of the criminal court of Cook county is therefore affirmed.

*Judgment affirmed.*