(No. 22334.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH DINENZA, Plaintiff in Error.

*Opinion filed April 21, 1934.*

BENJAMIN C. BACHRACH, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The plaintiff in error, (hereinafter called the defendant,) was jointly indicted in the criminal court of Cook county with Andrew Landicina charged with an attempt to extort by threats $5000 from James Isadoro. Landicina was not tried. The jury found the defendant guilty. The motions for new trial and in arrest of judgment interposed by the defendant were severally overruled. Judgment was entered on the verdict and the defendant was sentenced to the penitentiary. This writ of error is sued out to review that judgment.

The errors assigned challenge the sufficiency of the evidence to support the conviction, and the admission in evidence, over the objection of the defendant, of three threatening letters. The three letters were dated June 30, July 4 and July 7, 1933, respectively. Each letter contained threats and an attempt to extort money.

Andrew Landicina, John Collopy and James Isadoro were the only witnesses who testified. Isadoro identified the letters and the envelopes in which the same were enclosed, and stated that he received the same through the United States mail. He testified that he had known Landicina for at least three years; that he saw Landicina at the witness' store in July, after he got the first two letters, and talked with him; that the last time he saw Landicina was two days after witness received the third letter; that

on this occasion Landicina came to get an answer to the letter, and that the witness had a conversation with him on that occasion. On the defendant's motion the court struck out the purpose of Landicina's call. The witness also testified that he had during this same period of time seen Landicina on the street; that after Landicina's last visit the witness went to the State's attorney's office and related the case, and that after this call at the State's attorney's office Landicina was arrested. The witness did not know whether the defendant was arrested.

Andrew Landicina, called as a witness on behalf of the People, testified that he had a "little speak-easy;" that he had known the defendant about a month; that the witness was represented by counsel, and that he talked to the State's attorney in the presence of his attorney; that before June 30 the defendant came to the witness' house three or four times a week; that there were in the home envelopes and a writing tablet kept on and in a writing desk; that the wife of the witness could write but that he could not read nor write; that the defendant wrote about two or three letters at the house, and that on one occasion he asked the witness, about a month before July 1, whether Isadoro had any money. The witness identified a writing pad and fountain pen as belonging to the family. On cross-examination by the public defender Landicina testified that he went to Isadoro's store as often as two or three times a day but only when he wanted to buy something; that he got the fountain pen from a bank by depositing five dollars, and that he saw the bank was not fair and drew the five dollars out after one year. He admitted on cross-examination that he could write his name but denied he wrote anything other than his name. He at first, on his cross-examination, positively denied that he ever talked with the assistant State's attorney who was trying the case; positively denied that he had ever talked to anyone connected with the State's attorney's office about

his testimony; positively denied he had ever talked with a police officer or anyone about his testimony; again repeated his statement that he had never talked to the assistant State's attorney, and said he had talked to his own attorney but that the assistant State's attorney was not present. Later he conceded the assistant State's attorney was present. He then admitted that he had understood the previous questions in which he had denied he had ever talked about his evidence. He further testified that he expected to go free because he was helping the State's attorney as a witness. The last two questions asked on cross-examination were as follows:

Q. "Do you think, now, you committed any crime in anything you did with reference to Isadoro? Do you think you committed any crime?

A. "No, sir.

Q. "You think you didn't. Have you told us everything in connection with this matter that the defendant Joseph Dinenza did in connection with it as far as you were concerned? Have you told everything here to this jury?

A. "Yes, sir."

John Collopy testified that he was a police officer in Chicago and that he arrested Landicina on July 10 at his home. After arresting him the officer had a conversation with him. On the next day the officer had a conversation with the defendant, who denied knowing anything about the Isadoro affair but did inquire if Landicina had done any talking, to which question the officer replied, "Yes." The defendant then stated, "If you give me a break I will give you a lot of information." The officer then related that the defendant told him about a truck-load of cigarettes that had been taken in a hold-up. This statement of the witness was stricken by the court.

The above is the substance of all the material evidence given on the trial against the defendant. He did not give the officer any information with reference to the extor-

tion charge, nor did he ever make any admission of any connection with or knowledge of the perpetration of the crime presented by the case at bar.

It is clear that Landicina was connected with the perpetration of the outrageous crime. The position assumed by him on the trial was that of an accomplice. Whether the defendant was criminally connected with the offense was the issue. It is obvious that the moral senses of Landicina were, to put it mildly, blunted, but at that, the evidence did not connect the defendant with the offense for which he was being tried. The mere fact that he may have written two or three letters at the Landicina home does not prove any relation on his part with the threatening letters attempting to extort money from and threatening the personal safety of Isadoro.

Landicina testified that he told everything to the jury. Possibly he did and possibly he did not. The testimony of an accomplice is not to be passed upon the same as the testimony of any other witness, but the rule is that his evidence is to be acted upon with great caution and is to be subjected to grave suspicion. The jury trying the case can convict only when they believe from such evidence and all the circumstances in evidence that the defendant is proved guilty beyond a reasonable doubt. (*People* v. *Rongetti,* 338 Ill. 56.) Even taking Landicina's evidence at face value, his testimony does not prove the defendant guilty of the crime charged by the indictment. It is the rule that where the evidence is sufficient to sustain a conviction it is ordinarily a question for the jury, yet where the evidence, considered as a whole, does not establish the guilt of the defendant beyond a reasonable doubt it is the duty of the court to reverse such judgment. Without proof connecting the defendant with the preparation or mailing of the letters there is no competent evidence establishing his guilt. The admission of the letters was very prejudicial to the defendant. No sufficient foundation was

laid for their admission in evidence and they should not have been admitted. The defendant's guilt was not proved beyond a reasonable doubt.

The judgment of the criminal court of Cook county is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*