(No. 21698.—■)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LAMPTON LIDDELL, Plaintiff in Error.

*Opinion filed June 22, 1933—Rehearing denied October 4, 1933.*

FRANK A. McDONNELL, and S. B. McDONNELL, Jr., (ELWYN E. LONG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Lampton Liddell, by an indictment returned in the criminal court of Cook county, was charged with the murder of LaFisher Alexander. The defendant pleaded not guilty and waived a trial by jury. The court found him guilty of manslaughter, and after overruling motions for a new trial and in arrest of judgment, sentenced him to the penitentiary. Liddell prosecutes this writ of error.

On the evening of December 30, 1931, certain police officers of the city of Chicago received a report that an automobile accident had occurred in the vicinity of 1310 Roosevelt road. Three officers drove to that address and found a man lying on the sidewalk. They took him to the bridewell hospital, where blood was washed from his face and it was discovered that he had been shot. The victim

was identified as LaFisher Alexander and he informed the police officers that the plaintiff in error had shot him. Three officers arrested the plaintiff in error at his home and took him to the hospital where Alexander pointed him out as his assailant and signed a written statement to that effect. Afterwards, at a police station, the plaintiff in error in writing admitted that he shot Alexander and told the officers where the revolver which he used might be found. An investigation at the address given led to the discovery of a thirty-eight caliber Colt revolver in the basement and of three empty shells in the rear yard. Alexander died on January 3, 1932. A post-mortem examination of the body disclosed three bullet wounds in the head and neck and one in the left elbow. A flattened lead bullet was removed from the head.

The plaintiff in error and the decedent were first cousins; they were respectively twenty-six and twenty years of age, and they came from Mississippi. During their residence in that State, Alexander paid unwarranted attentions to the wife of the plaintiff in error and a suit and decree for divorce followed. After his removal to this State, the plaintiff in error married again and obtained employment in Chicago. Alexander's brother, and later Alexander himself, also came to Chicago, and shortly thereafter made their home with the plaintiff in error. In a few months Alexander began to pay attentions to Liddell's second wife. The plaintiff in error attempted to prevent communications between them and requested both Alexander and his brother to leave his home. Although they found quarters in the vicinity, Alexander continued to write to and to call upon Mrs. Liddell. The plaintiff in error intercepted one of Alexander's letters and on the day of the homicide spoke to him, at their common place of employment, concerning the letter and the proposed loan of a revolver which the former possessed. Finding it inconvenient to hold a conversation at the particular place, Alexander suggested that

they meet elsewhere. The suggestion was followed, and at the second place of meeting, they drank some whiskey and the plaintiff in error produced his revolver for Alexander's inspection. Alexander examined the revolver and returned it to the plaintiff in error. During this conversation Alexander admitted that his relations with Mrs. Liddell had been illicit, and he added that he proposed to continue paying attentions to her. The remonstrance of the plaintiff in error and his assertion that he would prevent further meetings and communications with his wife were followed by Alexander's threat to kill the plaintiff in error and by an attempt to regain possession of the revolver. A struggle ensued during which the revolver was discharged and a bullet struck Alexander. The latter started to run and when he was about to fall, the plaintiff in error shot him two or three times. After the shooting, the plaintiff in error stopped at a restaurant to eat, attended a moving picture theater, and returned to his home where he was arrested. No person other than the plaintiff in error and Alexander was present at the scene of the homicide.

Three contentions are made for a reversal of the judgment. The first is that the venue was not proved. Alexander was found at or near 1310 Roosevelt road. Shortly thereafter the plaintiff in error was arrested at his home and later the same evening admitted the shooting. Laphon Alexander saw his brother LaFisher early on December 30, 1931, when the latter apparently was in good health; he saw him again on the same day, shortly before midnight, at the bridewell hospital, after he had been shot, and finally on January 3, 1932, at the morgue after death ensued. The place of the homicide, the home of the plaintiff in error, the hospital and the morgue, it was proved beyond a reasonable doubt, were within the city of Chicago, in Cook county. The conclusion is irresistible that the venue was proved and that the proof sustained the pertinent allegation of the indictment.

The second contention is that the judgment is insufficient to be pleaded in bar of another prosecution upon an indictment for the same offense. The court, after hearing all the evidence, found the plaintiff in error "guilty of manslaughter in manner and form as charged therein." The judgment upon this finding recites: "Therefore it is considered, ordered and adjudged that the said defendant, Lampton Liddell, is guilty of the said crime of manslaughter upon the indictment in this cause and the said finding of guilty." It is argued, in support of this contention, that the words of the finding, "in manner and form as charged therein" are not equivalent to the words "in manner and form as charged in the indictment." The plaintiff in error was called upon to answer the charge of murder. The charge was made by an indictment against him. The words of the finding "as charged therein" mean only the charge in the indictment, and it is so stated in the judgment. The crime of manslaughter is embraced in the charge of murder, and the person accused may be found not guilty of murder and convicted of manslaughter if the evidence authorizes it. (*People* v. *Rongetti*, 338 Ill. 56; *People* v. *Beil*, 322 id. 434; *People* v. *White*, 311 id. 356; *People* v. *Schultz*, 267 id. 147.) Upon such an indictment, a judgment on a finding that the defendant is guilty of manslaughter will bar a second prosecution for murder arising out of the same facts. *People* v. *Carrico*, 310 Ill. 543; *Barnett* v. *People*, 54 id. 325; *Brennan* v. *People*, 15 id. 511.

The third contention is that the plaintiff in error was not proved guilty of manslaughter beyond a reasonable doubt. The testimony of the plaintiff in error is that, at their last meeting, Alexander confessed his intimacy with the former's wife; that Alexander threatened to kill him and attempted to wrest his revolver from him; that a struggle followed in which the revolver was accidentally discharged and the bullet struck Alexander and that, as he was about to fall, the plaintiff in error turned and fired two

or three additional bullets, all of which lodged in Alexander's body. This testimony failed to show that the plaintiff in error fired the shots after the first in self-defense and an acquittal on that ground would not have been justified. The trial court believed that the shooting lacked the deliberation necessary to constitute the crime of murder; and it cannot be said that the finding that the plaintiff in error was guilty of manslaughter was prejudicial to him.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*